In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Edwin W. CONMEY, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Edwin W. CONMEY, Respondent-Appellant.

Supreme Court

*No. 2003AP517–D. Submitted on briefs September 30, 2005.
—Decided December 13, 2005.*

2005 WI 166

(Also reported in 706 N.W.2d 633.)

514

For the respondent-appellant there were briefs by *Edwin W. Conmey,* Oconomowoc.

For the complainant-respondent there was a brief by *Marc T. McCrory* and *Brennan, Steil & Basting, S.C.,* Janesville.

¶ 1. PER CURIAM.   Attorney Edwin W. Conmey has appealed from a referee's report concluding that he engaged in professional misconduct and recommending that his license to practice law in Wisconsin be revoked.

¶ 2. We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. We further determine that the seriousness of Attorney Conmey's misconduct warrants the revocation of his license to practice law in Wisconsin. We also agree with the referee that the costs of the proceeding should be assessed against Attorney Conmey and that he be required to make restitution to the State Bar of Wisconsin Client Security Fund.

¶ 3. Attorney Conmey was admitted to practice law in Wisconsin in 1968 and practices in Oconomowoc. He has not previously been the subject of a disciplinary action.

¶ 4. In June 2003 the Office of Lawyer Regulation (OLR) filed an amended complaint alleging that Attorney Conmey engaged in eight counts of professional misconduct with respect to his handling of two estates. The amended complaint alleged five counts of misconduct with respect to Attorney Conmey's handling of the C.G. estate. Attorney Conmey drafted a last will and testament for C.G. which was executed in front of witnesses on March 15, 1991. Attorney Conmey appointed himself as personal representative for the administration of the estate and provided that he would serve without bond. C.G. died on March 31, 1995. On April 3, 1995, Attorney Conmey was appointed special administrator of C.G.'s estate, and on May 16, 1995, he was appointed personal representative. The informal administration of the estate commenced in April 1995. Attorney Conmey remained personal representative and attorney for the estate until September 4, 2001.

¶ 5. On May 6, 1999, Attorney Conmey filed a final account and petition indicating that the estate's assets consisted primarily of a residence on Okauchee Lake, personal property, a vehicle, miscellaneous in-

517

vestments, and collections of baseball cards, firearms, coins and comic books. The final account listed the gross value of the estate at $432,227 and showed undistributed assets of $96,610. The final account listed a claim for attorney fees in that same amount. The amount of requested attorney fees was based on Attorney Conmey's invoice dated April 29, 1999 in the amount of $98,418 describing services rendered from March 31, 1995 through September 17, 1997. Attorney Conmey billed his time at rates up to $210 per hour. The invoice claimed 548 hours were expended on the estate, including legal, nonlegal and nonlawyer time. According to the OLR's amended complaint, the bill included hourly charges for attending C.G.'s funeral, snow removal, checking C.G.'s house, starting a dehumidifier, putting a battery charger on the estate's truck, setting a thermostat and plugging in a refrigerator.

¶ 6. The OLR's amended complaint alleged in less than a two-year period, Attorney Conmey distributed from two estate checking accounts and his trust account more than $97,000 of estate funds to himself and his law firm for fees. The amended complaint alleged most of this money could not have been reasonably considered legal fees in light of the work Attorney Conmey performed for C.G.'s estate.

¶ 7. On May 1, 2000, a hearing was held before Judge Lee Dreyfus, Jr. for approval of Attorney Conmey's personal representative fees and attorney fees. It became evident at the hearing that Attorney Conmey had been disbursing estate funds to himself during his administration of the estate. On May 26, 2000, the circuit court issued an order finding that the estate should pay Attorney Conmey attorney fees of $21,875 for his professional services based on a fee of $175 per hour for 125 hours which was found by the

court to be work of a professional legal nature. The court also ordered C.G.'s estate to pay Attorney Conmey $8645 as a personal representative's commission, based on 2 percent of the value of the inventory of the assets as of April 30, 1999. The court found that Attorney Conmey overcharged the estate by requesting a total of $98,418 for a combination of attorney fees and personal representative fees. The court ordered Attorney Conmey to repay the estate $67,338 of excess fees he took from the estate without court approval. The court ruled that the vast majority of time spent by Attorney Conmey on the estate was personal representative time, compensation for which is capped by statute at 2 percent of the value of the estate. The court further concluded that all legal billable time should have been completed by June 1996 and it found that the estate should have been closed in the year 1997.

¶ 8. The circuit court directed that all final documents and closing documentation for C.G.'s estate were to be filed within 30 days of May 1, 2000. An order to show cause hearing was scheduled for July 21, 2000 at which time Attorney Conmey represented to the court that the estate would be closed when he received the closing certificate from the State of Wisconsin. Nine months later, on April 21, 2001, the estate was again before Judge Dreyfus, at which time Attorney Jeffrey Kaczmarski objected to any additional attorney fees being paid to Attorney Conmey.

¶ 9. Attorney Conmey asked to resign as personal representative of C.G.'s estate and asked the court to allow him 30 days to close the estate. On May 23, 2001, the matter was again before Judge Dreyfus to determine why the estate had not yet been closed. Attorney Conmey said he was waiving any additional attorney fees he had previously requested, and he asked for an

extension until the end of June 2001 to close the estate. The court indicated if the estate was not closed by June 29, 2001 the court would discharge Attorney Conmey as personal representative and would appoint a successor personal representative.

¶ 10.  On September 6, 2001, Judge Dreyfus issued an order discharging Attorney Conmey as personal representative for the C.G. estate and appointed Attorney George Love as successor personal representative. Shortly after Attorney Love was appointed successor personal representative, he filed a civil action on behalf of C.G.'s estate in Waukesha County Circuit Court alleging that Attorney Conmey had converted $67,338 of the estate to his own personal use. The estate sought treble damages as it alleged the civil conversion constituted embezzlement for purposes of the criminal code and thus triggered the possibility of a treble damage award under Wis. Stat. § 895.80 (2001–02).

¶ 11.  Attorney Love filed a motion for summary judgment in February 2002. The circuit court granted the estate's motion and ordered that the estate recover the amount of $67,338 plus interest of $20,658. The court denied the estate's motion for summary judgment on the treble damages claim, finding there was an open issue on Attorney Conmey's intent.

¶ 12.  The intent issue was tried to a jury in October 2002. The jury returned a special verdict finding that Attorney Conmey had transferred, used and retained the sum of $67,338 of C.G.'s estate with the intent to convert the money to his own use. Following motions after verdict, a judgment was entered against Attorney Conmey on November 18, 2002 in the amount of $179,704. Of that amount, $67,338 was awarded to the State Bar of Wisconsin Client Security Fund, which had paid that amount to the C.G. estate after determining that Attor-

ney Conmey had acted dishonestly in the matter. The balance was awarded to C.G.'s estate.

¶ 13. Attorney Conmey appealed the judgment. The court of appeals summarily affirmed on February 25, 2004. Attorney Conmey's principal argument on appeal was that the attorney who represented him in the civil action provided ineffective assistance of counsel. This court denied a petition for review. To date Attorney Conmey has paid less than $2500 on the judgment.

¶ 14. The OLR's amended complaint also alleged that Attorney Conmey engaged in misconduct with respect to his handling of the E.S. estate. In 1983 Attorney Conmey prepared a will for E.S. in which he was designated as the alternate personal representative. He became the primary personal representative upon the death of E.S.'s husband. In 1995 Attorney Conmey prepared a codicil to E.S.'s will which addressed only her burial. E.S. died in July 1998. Attorney Conmey filed her will and codicil with the Waukesha County Circuit Court, and he was appointed personal representative. The beneficiaries of the estate were E.S.'s son, K.S., and her grandchildren, M.S. and E.S-H.

¶ 15. The E.S. estate was opened in July 1998. Attorney Conmey failed to timely file the estate's inventory. Wisconsin has an 18–month deadline to close estates. In January 2000 the Waukesha County Register in Probate sent Attorney Conmey a notice of delinquent estate. Attorney Conmey repeatedly requested and received extensions to close the E.S. estate, saying he needed additional time in order to prepare the final fiduciary income tax returns and obtain a closing certificate.

¶ 16. Attorney Conmey filed a final account in the E.S. estate on November 14, 2000. In the final account he indicated that he had received $8997 for attorney

fees and he also listed $7856 to be paid to him for personal representative fees. Attorney Conmey did not obtain or seek court approval to pay himself both his attorney fees and personal representative fees prior to his receipt of the attorney fees.

¶ 17. The Waukesha County Register in Probate objected to Attorney Conmey taking both attorney fees and personal representative fees without court approval. Attorney Conmey was given the option to petition the court to allow both fees. He indicated he would not ask the court to approve both fees and said he would take only the personal representative fee and would not retain the attorney fees.

¶ 18. On February 20, 2001, Attorney Conmey filed a closing certificate for fiduciaries and informed the court he would be closing the estate within 30 days. During a hearing on May 8, 2001, Attorney Conmey said he was not taking the attorney fees, and he agreed to refund the $8997 he had previously paid himself from estate funds. The circuit court required Attorney Conmey to file an amended final account and amended income tax return and obtain a new closing certificate from the Wisconsin Department of Revenue. He filed amended tax returns in May 2001. During hearings in June and September 2001, he told the circuit court he was still waiting for the new closing certificate from the Wisconsin Department of Revenue. In November 2001 he wrote to the Department of Revenue requesting the closing certificate.

¶ 19. Because the estate was not closed, the circuit court held monthly status hearings from November 2001 to March 2002. During a hearing on December 18, 2001, Attorney Conmey presented the amended closing certificate and partial receipts on incorrect forms that did not include the distribution of $8997 that he was

supposed to return to the estate for attorney fees he had previously paid himself without court approval.

¶ 20. On January 8, 2002, the Waukesha County Register in Probate requested formal probate proceedings before the probate judge due to Attorney Conmey's extreme delay in closing E.S.'s estate. During hearings in January, February and March 2002, Attorney Conmey told the court he needed to obtain receipts from one of the beneficiaries, M.S., who was traveling overseas.

¶ 21. On March 21, 2002, Attorney Conmey sent final distribution checks to the three beneficiaries of the estate for the $8997 he had previously paid himself for attorney fees. The checks were issued from Attorney Conmey's business checking account at First Bank Financial Center. Checks were written to K.S. for $4498, to M.S. for $2249, and to E.S-H. for $2249. Two of those checks bounced.

¶ 22. An order to show cause hearing was held on April 29, 2002 with K.S. and M.S. appearing by telephone and Attorney Conmey appearing in person. The circuit court instructed K.S. and M.S. to redeposit their checks and appear at a further hearing on May 6, 2002. In a letter dated May 2, 2002, M.S. informed the court and the register in probate that on April 30, 2002 Attorney Conmey's bank had informed M.S. that Attorney Conmey's account did not have sufficient funds to cover the two outstanding checks, that Attorney Conmey left M.S. a message saying he had deposited sufficient funds that morning to cover the checks, and during the April 29, 2002 hearing, Attorney Conmey said he had sufficient funds in his account to cover the checks. M.S. told the court that Attorney Conmey had made a number of misstatements relating to the dishonored checks.

¶ 23. During a May 6, 2002 hearing, the circuit court called a recess and asked M.S. to call Attorney Conmey's bank to see if the check had cleared. M.S. spoke with a bookkeeper at the bank and was informed his check had in fact cleared on May 1 and that K.S.'s check had cleared on May 3. M.S. reported that conversation to the court when the hearing resumed. The information from the bank that K.S.'s check had cleared, however, was incorrect. K.S. called Attorney Conmey's bank that same day and was told by an assistant vice-president that the check payable to K.S. had been rejected for insufficient funds. In a letter to the court dated May 6, 2002, K.S. said Attorney Conmey had continued to give him false information regarding the final distribution check and also said the check had twice been presented and twice rejected for insufficient funds.

¶ 24. First Bank Financial Center's assistant vice-president wrote to the register in probate on May 7, 2002 stating that Attorney Conmey's check to K.S. was presented for payment on May 3, 2002 and on that date Attorney Conmey's business account had a balance of only $33, so presenting the check overdrew the account to a negative $4465. The bank official said Attorney Conmey deposited $2400 into his account on May 4, 2002, which left a negative balance in the account of $2065. The probate court held status conferences on May 13 and June 3, 2002. At the June 3 conference K.S. informed the court that he had finally received his money and that all checks had cleared.

¶ 25. The OLR's amended complaint alleged the following counts of misconduct with respect to the C.G. estate:

Count 1: By failing to timely conclude and close the estate and to meet court imposed deadlines to do so,

Conmey failed to act with reasonable diligence and promptness in representing the client in violation of SCR 20:1.3.[1]

Count 2: By claiming a fee of $98,418.00 for an apparent combination of attorneys fees and personal representative fees when, in fact, the vast majority of the time expended was non-professional services, Conmey charged a fee that was unreasonable contrary to SCR 20:1.5(a).[2]

Count 3: By disbursing funds from the estate to himself as legal fees without court approval and then failing to place those funds back in trust after learning that the beneficiaries disputed his fees, Conmey failed to treat the funds as trust property until there was an account-

---

[1] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[2] SCR 20:1.5(a) provides that a lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

ing and severance of his and the beneficiaries' interests, in violation of [former] SCR 20:1.15(d).[3]

Count 4: By converting funds from the estate to his own use during his representation of the [C.G.] estate, Conmey engaged in conduct involving dishonesty, fraud, deceit and misrepresentation contrary to SCR 20:8.4(c).[4]

Count 5: By drafting a will which named him as the personal representative of the estate, Conmey drafted a will which required or implied that his services were to be used in relationship to that will, contrary to SCR 20:7.3(f).[5]

¶ 26. The OLR's amended complaint also alleged the following counts of misconduct with respect to the E.S. estate:

Count 6: By failing to timely conclude and close the [E.S.] estate and meet court-imposed deadlines in that matter, Conmey failed to act with reasonable diligence and promptness in representing the client in violation of SCR 20:1.3.

---

[3] Former SCR 20:1.15 applies to misconduct committed prior to July 1, 2004. Former SCR 20:1.15(d) Safekeeping property provides:

(d) When, in the representation, a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be treated by the lawyer as trust property until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall continue to be treated as trust property until the dispute is resolved.

[4] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[5] SCR 20:7.3(f) provides that "[e]xcept as permitted under SCR 11.06, a lawyer, at his or her instance, shall not draft legal documents, such as wills, trust instruments or contracts, which require or imply that the lawyer's services be used in relation to that document."

526

Count 7: By disbursing funds from the [E.S.] estate to himself as legal fees and disbursing additional estate funds to himself as personal representative fees, without first obtaining court approval, Conmey violated a statute regarding the conduct of lawyers [Wis. Stat. § 857.05(3)], contrary to SCR 20:8.4(f).[6]

Count 8: By issuing refund checks to beneficiaries in the [E.S.] estate from his business account when he knew or acted with reckless disregard as to whether there were insufficient funds in his account to cover the checks, Conmey engaged in conduct involving dishonesty, fraud, deceit or misrepresentation contrary to SCR 20:8.4(c).

¶ 27. Attorney Eugene A. Gasiorkiewicz was appointed referee in this matter. The OLR filed a motion for partial summary judgment. After receiving briefs, the referee issued an order dated February 26, 2004 granting the OLR's motion for summary judgment with respect to Counts 1, 2, 3, 4, 7 and 8 of the amended complaint.

¶ 28. A hearing was held before the referee on April 12, 2004 on the remaining counts. The referee issued his report on June 10, 2004. He concluded that the OLR failed to meet its burden of proof with respect to Count 5 of the amended complaint, but he found that the OLR did meet its burden of proof with respect to Count 6.

¶ 29. With respect to the appropriate discipline to impose for the misconduct, the referee noted that the conversion of funds to an attorney's personal use has long been considered an offense punishable by revocation. The referee said:

---

[6] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

I have searched the record to find some explanation for this conduct. Mr. Conmey appears in good health. Mr. Conmey appeared intelligent and articulate in his presentation at the hearing in this matter. He believes that he was entitled to the monies he took in at least the [C.G.] estate. . . .

In view of Mr. Conmey's unwillingness to recognize his errors in these matters, I am unable to state that they would not happen again. He has continued to offer explanation as to why he was entitled to the totality of his claimed fee in the [C.G.] estate, even after judicial review had taken place, and finds justification in issuing worthless checks in the [E.S.] estate.

Mr. Conmey has refused to settle with the [C.G.] estate the legal fee dispute, and has not settled with the subrogated State Bar of Wisconsin Client's Security Fund. The Court of Appeals found that Mr. Conmey's appeal "borders on the frivolous." He disbursed to himself and utilized nearly one-fifth of the [C.G.] Estate assets without court approval. When ordered to repay the estate, he neither complied nor placed the disputed amount in his trust account.

¶ 30.  The referee concluded that revocation of Attorney Conmey's license was the appropriate sanction for his numerous violations. The referee also recommended that Attorney Conmey be ordered to repay the State Bar of Wisconsin Client Security Fund $67,338.15 plus interest from October 16, 2002 forward, and that he be ordered to pay the costs of this proceeding, which are $9963.35 as of October 3, 2005.

¶ 31.  Attorney Conmey appealed the referee's decision, arguing that the referee improperly relied on the court of appeals decision upholding the treble damage award in the C.G. estate and that the referee improperly relied on three unsworn testimony letters in the E.S. estate circuit court file. As to the C.G. estate,

Attorney Conmey's principal argument is that because he was "charged with the crime of theft," he was entitled to the effective assistance of counsel. He blames the attorney who represented him in the civil lawsuit for his problems. He argues that his attorney intentionally kept him in the dark, and he asserts that by failing to meet court imposed deadlines for jury instructions, his attorney failed to act with reasonable diligence and promptness in representing him and denied him the opportunity to make informed decisions.

¶ 32.    Attorney Conmey continues to argue that his accounts in the C.G. estate "were detailed, open and honest," and he believes he was entitled to the money he took as fees.

¶ 33.    With respect to the E.S. estate, Attorney Conmey argues that the referee improperly relied on three unsworn letters that were in the E.S. estate court file. The letters at issue were written by beneficiaries of the E.S. estate to the circuit court. One of the letters said that Attorney Conmey had been "untrustworthy, uncommunicative, and unprofessional." Another letter said, "Mr. Conmey has given false information and failed to follow through on promises he has made to cover this check."

¶ 34.    While the referee did not make any specific findings of fact based on these letters, in finding of fact number 79, the referee said, "[b]eneficiaries of the [E.S.] estate called [the register in probate] on multiple occasions and sent letters to the court complaining about the delay in Mr. Conmey's handling of the estate." Attorney Conmey argues that the hearsay rule prevents the admission of unsworn written statements in court proceedings, and since the writers of the letters were not called to testify, he was unable to challenge the weight of the unsworn statements. He asserts if he had been given the

opportunity to cross-examine the persons writing the letters he could have exposed the writers' motives and prejudices and shown "that their posturing was pure and simple a pitch to the probate court in a futile attempt to force respondent to refund his personal representative's fee as well as his attorney's fees."

¶ 35. With respect to the referee's recommendation that his license to practice law be revoked, Attorney Conmey argues, "[t]hat is a pretty severe sanction in view of respondent's thirty-five years of law practice and the fact that he has not been the subject of disciplinary proceedings before and was cooperative with the investigation in this matter."

¶ 36. The OLR argues that the referee relied on the record when finding that Attorney Conmey converted funds from the C.G. estate, and the OLR says nothing in the referee's summary judgment decision of February 26, 2004 reflecting that the referee even knew the court of appeals had ruled on the appeal in the treble damages action on February 25, 2004. The OLR argues that the referee was able to rule on the C.G. estate misconduct based solely on Attorney Conmey's admissions in his answer, his prior testimony in the circuit court litigation, and the court records.

¶ 37. The OLR also asserts that Attorney Conmey's argument that the referee improperly relied on three unsworn testimony letters lacks merit. It says again the referee's findings of fact with respect to the E.S. estate are based entirely on Attorney Conmey's own admissions and testimony. The OLR points out that Attorney Conmey admitted in his deposition, which was read to him at the referee's hearing, that he wrote checks in the E.S. estate when he knew he did not have money in his account to cover them. While the OLR notes that the referee did discuss the three "unsworn" letters in his

report, he did so outside the findings of fact and conclusions of law in the portion of the report discussing the aggravating and mitigating circumstances of the case. In that regard the referee noted that during the pendency of the E.S. estate various letters written to the court summarized the damage done by Attorney Conmey to the legal profession. The OLR says the letters were not offered at the hearing to prove the truth of the matters contained therein, and it says the referee appropriately used some direct quotes from the letters to echo his own sentiment that Attorney Conmey's misconduct has hurt the public's perception of the legal profession.

¶ 38. A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg*, 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it deems appropriate regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686. Since the referee's findings of fact in this case have not been shown to be clearly erroneous, we adopt them. We also agree with the referee's conclusions of law. We further agree with the referee's recommendation that Attorney Conmey's license be revoked and that he be required to repay the Client Security Fund and pay the costs of this proceeding.

¶ 39. Conversion of client funds by an attorney is a very serious offense. Attorney Conmey overpaid himself more than $67,000 in the C.G. estate and so far has repaid less than $2500. Throughout the civil suit and the OLR proceeding, Attorney Conmey has refused to admit any wrongdoing, instead blaming the lawyer he hired to

531

represent him in the civil case. His arguments that the referee improperly relied on the court of appeals decision in the civil suit filed in the C.G. estate and that the referee improperly relied on unsworn letters sent to the circuit court in the E.S. estate are meritless.

¶ 40. As the referee noted, the conversion of funds to a lawyer's personal use has long been considered an offense punishable by revocation. *See, e.g., In re Disciplinary Proceedings Against Landa,* 157 Wis. 2d 510, 461 N.W.2d 141 (1990). Given the amount of money involved and Attorney Conmey's complete lack of remorse, there is no reason to depart from that general rule here. It is also appropriate to order Attorney Conmey to repay the Client Security Fund the money that it has paid out plus interest, and to require him to pay the costs of this proceeding.

¶ 41. IT IS ORDERED that the license of Attorney Edwin W. Conmey to practice law in Wisconsin is hereby revoked, effective January 24, 2006.

¶ 42. IT IS FURTHER ORDERED that Edwin W. Conmey repay the State Bar of Wisconsin Client Security Fund the amount of $67,338.61 plus interest from October 16, 2002.

¶ 43. IT IS FURTHER ORDERED that within 60 days of the date of this order, Edwin W. Conmey pay to the Office of Lawyer Regulation the costs of this proceeding.

¶ 44. IT IS FURTHER ORDERED that Edwin W. Conmey comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.