**2026 WI 8**

# Supreme Court of Wisconsin



IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
GUY K. FISH, ATTORNEY AT LAW

OFFICE OF LAWYER REGULATION,

*Complainant,*

*v.*

GUY K. FISH,
*Respondent.*

No. 2025AP2596-D

Decided March 20, 2026

ATTORNEY DISCIPLINARY PROCEEDING

¶1 PER CURIAM. This matter is before the court on Attorney Guy K. Fish's petition for consensual license revocation pursuant to Supreme Court Rule (SCR) 22.19,[1] based on his inability to defend three pending disciplinary investigations by the Office of Lawyer Regulation (OLR) involving three client matters and 17 counts of misconduct. In broad strokes, Attorney Fish is accused of: converting large sums of client money in three matters; making numerous misrepresentations to his clients, tribunals, and the OLR concerning the converted funds; and failing to

---

[1] SCR 22.19(1) provides that "[a]n attorney who is the subject of an investigation for possible misconduct or the respondent in a proceeding may file with the supreme court a petition for the revocation by consent of his or her license to practice law."

comply with a court order relating to certain converted funds. The OLR recommends granting Attorney Fish's petition. The OLR represents that Attorney Fish has reimbursed all of his clients for the sums he converted and therefore does not seek restitution. Based on the contents of the petition and the OLR's recommendation, this court agrees that it is appropriate to grant Attorney Fish's petition for consensual license revocation and revoke his license to practice law in Wisconsin, effective the date of this order.

## Background

¶2    Attorney Fish was admitted to the Wisconsin bar on June 4, 1981. He has no history of prior discipline in Wisconsin. On June 25, 2025, this court granted a motion from the OLR to temporarily suspend Attorney Fish's license to practice law pursuant to SCR 22.21 on the basis that Attorney Fish's continued practice of law "pose[d] a threat to the interests of the public and the administration of justice" due to his conversion of client funds amounting to nearly $300,000 in two separate client matters.[2] On October 23, 2025, this court extended the temporary suspension until further order of the court.[3]

¶3    Attorney Fish represents that he currently is the subject of three separate OLR investigations. He further represents that the OLR received cause to proceed from the preliminary review committee on eight counts of misconduct in the first matter, and that he has waived committee presentation of the second and third matters,[4] involving nine additional counts of misconduct. The OLR verifies these representations. Attorney Fish's petition attached as an exhibit a draft complaint by the OLR, asserting 17 counts of misconduct, which the OLR verifies it intended to file against Attorney Fish. Attorney Fish indicates that he "cannot successfully defend [himself] against the professional misconduct as alleged in [the draft

---

[2] *In re Disciplinary Proceedings Against Fish*, No. 2025XX743-D, S. Ct. Order (Jun. 25, 2025).

[3] *In re Fish*, No. 2025XX743-D, S. Ct. Order (Oct. 23, 2025).

[4] SCR 22.05(1)(e) permits the OLR Director and subject attorney to waive formal presentation of a grievance matter to the preliminary review committee.

complaint]" and is "giving up [his] right to further contest each misconduct allegation" contained therein. Those allegations are summarized below.

Counts 1-8

¶4 Counts 1-8 relate to Attorney Fish's representation of W.C. and P.H. involving their mother's estate in a Rock County probate proceeding between 2022 and 2025. When Attorney Fish's representation began, the estate held approximately $100,000 in assets in a bank account. Attorney Fish represented to W.C. that the estate would earn more interest if the funds were deposited in Attorney Fish's client trust account. Attorney Fish later made similar misrepresentations to the OLR in response to its inquiries.

¶5 However, Attorney Fish did not maintain a client trust account. Upon Attorney Fish's advice, the estate transferred $100,000 to Attorney Fish, which funds were deposited into his business operating account. Attorney Fish's bank statements, which were provided to the OLR, do not reflect any interest accruing to the estate from these funds. Attorney Fish's representations to W.C. and P.H. were false both because he did not maintain a client trust account and because attorney trust accounts do not earn interest for the account holder.

¶6 Attorney Fish subsequently converted the entire $100,000 for his own benefit or the benefit of other clients or third persons. On May 30, 2023, Attorney Fish filed a final accounting of the estate with the court, indicating that the estate held $104,927.16 in assets. This filing was false, because Attorney Fish had already converted all estate assets. Thereafter, W.C. and P.H. requested that Attorney Fish finalize the estate and transfer the estate funds back into the estate's bank account. Attorney Fish did not do so and provided various excuses for failing to return the money.

¶7 Ultimately, W.C. complained to the probate court about Attorney Fish's failure to transfer the funds back to the estate, and the matter was set for a hearing before a court commissioner on December 18, 2023. During the hearing, Attorney Fish represented that he failed to transfer the funds back to the estate due to "negligence" and would do so by the end of the week. The court commissioner continued the hearing to the following week (December 21, 2023), and ordered Attorney Fish to transfer the funds by that time. Attorney Fish failed to do so. During the continued hearing, Attorney Fish represented that he had requested a wire

transfer for the funds and the bank had not "confirmed" the requested transfer. That representation was false because Attorney Fish had not requested a wire transfer and the funds within his business operating account were insufficient to cover any such transfer.

¶8      Another hearing was held on January 18, 2024, before a circuit court judge. During that hearing, Attorney Fish represented that he had made a wire transfer of the funds but the transfer could not be completed because the "accounts would not reconcile." When the judge pressed Attorney Fish, he admitted that there were insufficient funds in his account to cover the transfer. Attorney Fish also represented that at that time he had converted $70,000 of the $100,000 in estate funds for his own purposes. The judge found Attorney Fish in contempt, sentenced him to 30-days in jail, stayed the sentence, and ordered that he repay the funds by the end of the month as a purge condition. Attorney Fish did not return the funds by the end of the month as ordered by the court.

¶9      At the next hearing in the matter, Attorney Fish admitted that the representations made at the previous hearing were untrue in that he had converted all of the estate funds in November/December of 2022. Attorney Fish advised that he had repaid only $5,000 in estate funds at that time, but expected to repay the remainder in the next several weeks, as he was expecting a settlement check in another client matter. The judge ordered a full accounting from Attorney Fish and continued the hearing to early February 2024. However, Attorney Fish did not receive the settlement check as anticipated. Ultimately, Attorney Fish reimbursed the estate the remaining funds by transferring money from his personal investment account. The circuit court thereafter concluded that Attorney Fish had complied with the contempt purge condition and closed the matter on June 10, 2024.

¶10     As a result of these actions, the OLR alleged that Attorney Fish violated the following rules of professional misconduct: SCR 20:1.15(b)(1)[5] by depositing the $100,000 in estate funds into his business

---

[5] SCR 20:1.15(b)(1) provides, in pertinent part, that "[a] lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation."

operating account rather than a client trust account (Count 1); SCR 20:8.4(c)[6] by converting the estate funds for his own use or the benefit of other clients or third parties (Count 2); SCR 20:8.4(c) by falsely representing to his client and the OLR that he had deposited the $100,000 into an interest bearing trust account (Count 3); SCRs 20:3.3(a)(1)[7] and 20:8.4(c) by filing a false final accounting of the estate funds in the probate matter (Count 4); SCRs 20:3.3(a)(1) and 20:8.4(c) by providing false explanations to the court commissioner as to why he had not returned the estate funds (Count 5); SCR 20:3.4(c)[8] by failing to comply with the court commissioner's December 18, 2023 order to return the estate funds (Count 6); SCRs 20:3.3(a)(1) and 20:8.4(c) by falsely representing to the court commissioner during the December 21, 2023 hearing that he had made a wire transfer request for the estate funds (Count 7); and SCRs 20:3.3(a)(1) and 20:8.4(c) by falsely representing to the circuit court judge at the January 18, 2024 hearing that he had converted only $70,000 of the $100,000 in estate funds at that time (Count 8).

Counts 9-13

¶11 Counts 9-13 relate to Attorney Fish's representation of J.D. and T.D. to assist with the sale of property they inherited from a relative in 2025. Attorney Fish caused closing checks totaling $373,598 to be made payable to his name rather than his clients or the title company and thereafter deposited the checks into his personal or business operating account rather than a client trust account. At the closing on April 1, 2025, Attorney Fish informed his clients that he did not have the sale proceeds after providing "multiple false excuses." When his clients inquired as to

---

[6] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[7] SCR 20:3.3(a)(1) provides that "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"

[8] SCR 20:3.4(c) provides that "[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists[.]"

why the checks were made payable to Attorney Fish, he falsely asserted it was because he was the "closing agent."

¶12    After his clients continued to demand their money, Attorney Fish told them that he had converted the funds and falsely stated that he had loaned the money to another client. Attorney Fish failed to provide proof to his clients to substantiate his representation that he had loaned the money to another client. Attorney Fish also represented to his clients that he was going to access his 401K account to repay the monies. Attorney Fish's clients reported him to the police department and filed a grievance with the OLR. The following month, Attorney Fish sent a wire transfer to his clients for more than the amount he owed. His clients returned the difference.

¶13    As a result of these actions, the OLR alleged that Attorney Fish violated the following rules of professional misconduct: SCR 20:1.15(b)(1) by depositing his clients' funds into his personal or business operating account rather than a client trust fund account (Count 9); SCR 20:8.4(c) by having the closing checks made payable to himself rather than his clients or the title company and falsely representing that he was the "closing agent" (Count 10); SCR 20:8.4(c) by converting his clients' funds to his own use or for the benefit of other clients or third parties (Count 11); SCR 20:8.4(c) by providing his clients with multiple false excuses as to why he was not in possession of their funds (Count 12); and SCR 20:1.15(e)(1)[9] by failing to promptly deliver the closing funds to his client (Count 13).

### Counts 14-17

¶14    Counts 14-17 relate to Attorney Fish's representation of V.Y. and P.Y. in 2024, involving the sale of a condominium property. Attorney Fish agreed to represent his clients at a closing scheduled for May 8, 2024, in exchange for a flat fee of $3,000. Attorney Fish did not provide a written fee agreement. Attorney Fish prepared a closing statement indicating that

---

[9] SCR 20:1.15(e)(1) states, in pertinent part, that "[e]xcept as . . . otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client . . . any funds or property that the client . . . is entitled to receive."

he would use his firm's trust account to hold the closing proceeds, despite the fact that he did not possess a trust account.

¶15     Attorney Fish's clients were to receive $195,947.73 from the sale of the property. Attorney Fish deposited the entire amount into his personal or business account rather than a client trust account. Following the closing, Attorney Fish "provided multiple false excuses as to why he could not deliver the sale proceeds" and falsely represented that his wife had already mailed a check to the clients. When the clients indicated that they did not receive a check, Attorney Fish falsely asserted that the delay was due to a mandatory 90-waiting period required by "government regulations."

¶16     Attorney Fish's clients scheduled a meeting to pick up the check after 90 days, but Attorney Fish cancelled the night before due to alleged health issues. The clients attempted unsuccessfully to meet with Attorney Fish in the following weeks. Attorney Fish finally agreed to deliver a check to his clients on October 21, 2024. At that meeting, Attorney Fish presented a check issued from his business account for more than the amount due to his clients, which he explained was because they had been "so understanding." When his clients attempted to cash the check, there were insufficient funds to honor it.

¶17     Thereafter, V.Y. demanded that Attorney Fish provide him with a cashier's check for the total amount of the closing proceedings. Attorney Fish further delayed by several weeks and "appeared at more than one meeting with more excuses as to why he did not have a check in hand." Attorney Fish then made arrangements to deliver a cashier's check in the amount of $200,000 on November 18, 2024, but did not present a check to his clients on that date either. Instead, he admitted "that he had converted the closing funds to his own use" and "had fabricated the excuses . . . for his failure to disburse the sale proceeds." Attorney Fish promised to deliver the funds by November 22, 2024, but did not do so.

¶18     On November 23 and 26, 2024, Attorney Fish emailed his clients, acknowledging that he owed the closing funds and stating that he would raise money to repay them. He failed to do so. As a result, his clients filed a civil lawsuit alleging conversion and theft. As a result of that lawsuit, Attorney Fish paid his clients over $200,000 to cover their closing proceeds, attorney fees, and costs, which resulted in dismissal of the lawsuit.

¶19    As a result of these actions, the OLR alleged that Attorney Fish violated the following rules of professional misconduct: SCR 20:1.15(b)(1), by depositing his clients' funds into his personal or business operating account instead of a client trust account (Count 14); SCR 20:8.4(c) by converting his clients' funds to his own use or the benefit of other clients or third parties (Count 15); SCR 20:8.4(c) by providing multiple false explanations to his clients as to why he could not deliver their closing funds (Count 16); and SCR 20:1.15(e)(1) by failing to promptly deliver the closing funds to his clients upon receipt (Count 17).

¶20    As indicated, Attorney Fish represents that he cannot successfully defend the above allegations and knowingly and voluntarily waives his right to further contest them. Attorney Fish acknowledges that the OLR intends to seek revocation of his license to practice law, and verifies that he understands his right to contest these matters, call and cross-examine witnesses, present evidence on his own behalf, and hold the OLR to its burden to prove the above allegations by clear, satisfactory, and convincing evidence. Attorney Fish further acknowledges that he has the right to counsel, that he fully understands the ramifications of filing his petition, and that he is aware of his duties under SCR 22.26[10] should this court revoke his license to practice law.

## Analysis

¶21    Having considered the contents of Attorney Fish's petition for consensual license revocation and the OLR's response, we grant the petition and order that Attorney Fish's license to practice law in Wisconsin be revoked as of the date of this order.

¶22    As the OLR correctly points out, revocation is the appropriate sanction where an attorney has converted large sums of client funds for his own benefit. *See*, *e.g.*, *In re Disciplinary Proceedings Against Wynn*, 2014 WI 17, 353 Wis. 2d 132, 845 N.W.2d 663 (granting consensual license revocation and revoking license based on attorney's admission to converting over $750,000 of client money); *In re Disciplinary Proceedings Against Krombach*, 2005 WI 170, ¶63, 286 Wis. 2d 589, 707 N.W.2d 146 (attorney's license

---

[10] SCR 22.26 governs the activities of an attorney whose license is suspended or revoked.

revoked in contested proceeding based on "extended pattern of converting large sums of [client] money for his own personal use, his alteration of documents in an attempt to hide his theft, [and] his taking advantage of a vulnerable client"); *In re Disciplinary Proceedings Against O'Byrne*, 2002 WI 123, 257 Wis. 2d 8, 653 N.W.2d 111 (revocation imposed where attorney converted nearly $34,000 of client funds and altered checks produced to the OLR); *In re Disciplinary Proceedings Against Hinnawi*, 202 Wis. 2d 113, 549 N.W.2d 245 (1996) (revocation imposed where attorney converted substantial client funds while serving as personal representative and attorney for an estate).

¶23    Here, the nature and seriousness of the misconduct is staggering. Attorney Fish converted over $671,545 in three separate client matters over the course of several years. Revocation is further appropriate in this case in light of the multiple instances in which Attorney Fish made false representations to his clients, judicial tribunals, and the OLR, and based on Attorney Fish's failure to comply with a court order.

¶24    Attorney Fish has not provided any facts or arguments that would mitigate the sanction in this case. To that end, we note that this court has not hesitated to revoke an attorney's license in similar circumstances, despite the lack of prior discipline. *See, e.g., In re Wynn*, 2014 WI 17 (granting petition for consensual license revocation and revoking license due to conversion of large amount of client funds despite lack of prior discipline); *In re Disciplinary Proceedings Against Mularski*, 2010 WI 113, 329 Wis. 2d 273, 787 N.W.2d 834 (granting petition for consensual license revocation and revoking license for conversion of client funds despite no prior discipline); and *In re Disciplinary Proceedings Against Conmey*, 2005 WI 166, 286 Wis. 2d 514, 706 N.W.2d 633 (revocation imposed for converting estate funds despite no prior disciplinary history). Revocation of Attorney Fish's license is consistent with that precedent.

¶25    Because the OLR has confirmed that Attorney Fish has repaid all of the monies he converted, no restitution is ordered. Because this matter comes to us without the appointment of a referee, no costs are imposed.

¶26    IT IS ORDERED that Attorney Guy K. Fish's petition for consensual license revocation is granted.

¶27    IT IS FURTHER ORDERED that the license of Attorney Guy K. Fish to practice law in Wisconsin is revoked effective the date of this order.

¶28    IT IS FURTHER ORDERED that Attorney Guy K. Fish shall comply with the requirements of SCR 22.26 relating to activities following revocation.

IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
ATTORNEY GUY K. FISH
ANNETTE KINGSLAND ZIEGLER, J., concurring

ANNETTE KINGSLAND ZIEGLER, J., with whom JILL J. KAROFSKY, C.J., REBECCA GRASSL BRADLEY, BRIAN HAGEDORN, and JANET C. PROTASIEWICZ, J.J., join, concurring.

¶29     I concur in the court's order revoking Attorney Fish's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for reinstatement after a period of five years. *See* SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. *See In re Disciplinary Proceedings Against Moodie*, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, *In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings*, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. *See* S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶30     For the foregoing reason, I concur.