Jeanett MARKWARDT and George Markwardt,
Plaintiffs-Appellants,†

Tommy THOMPSON,
Secretary of Department of Health & Human
Services, and Humana Insurance Company,
a Wisconsin Insurance Corporation,
Involuntary-Plaintiffs,

v.

ZURICH AMERICAN INSURANCE COMPANY,
a foreign Insurance Corporation, Nahop
Partners, LP, a foreign limited partnership, and
Radisson Hotel Milwaukee Airport, Defendants,

CANNON & DUNPHY, S.C.,
Third Party-Intervenor-Respondent.
[Case Nos. 2004AP3236 and 2005AP1857.]

Evelyn RODRIGUEZ, Plaintiff-Appellant,

MOTOROLA, INC., Involuntary-Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, a foreign insurance
corporation, and Jennifer Nagode, Defendants,

CANNON & DUNPHY, S.C., Intervenor-Respondent.
[Case No. 2005AP1292.]

Lori A. TUCEK, Plaintiff-Appellant,

† Petition to review denied 3/16/07.

512

MANAGED HEALTH SERVICES, a Wisconsin Insurance
Corporation, and Travelers Property Casualty
Insurance Company, a domestic insurance
company, Involuntary-Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, a foreign insurance corporation, and
Edna M. North, Defendants,

v.

CANNON & DUNPHY, S.C.,
Third Party-Intervenor-Respondent.
[Case No. 2005AP1856.]

Pamela D. DRASKOVICH, Plaintiff-Appellant,

UNITED HEALTHCARE OF WISCONSIN, INC.,
a Wisconsin corporation, and American Family
Mutual Insurance Company, a Wisconsin
insurance corporation, Involuntary-Plaintiffs,

v.

Kristin R. McCAULEY and State Farm Mutual
Automobile Insurance Company, a foreign
insurance corporation, Defendants,

CANNON & DUNPHY, S.C., Intervenor-Respondent.
[Case No. 2005AP2543.]

Court of Appeals

*Nos. 2004AP3236, 2005AP1292, 2005AP1856, 2005AP1857,
2005AP2543. Submitted on briefs August 2, 2006.
—Decided September 12, 2006.*

513

2006 WI App 200

(Also reported in 724 N.W.2d 669.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *James J. Gende II* of *Gende Law Offices, S.C.* of Waukesha and *Robert E. Barnes* of *Law Office of Robert G. Bernhoft* of Milwaukee.

On behalf of the third-party-intervenor-respondent, the cause was submitted on the brief of *Terry E. Johnson* of *Peterson, Johnson & Murray, S.C.* of Milwaukee.

Before Fine, Curley and Kessler, JJ.

¶ 1. KESSLER, J. Because each trial judge assigned to one of these cases properly determined that Cannon & Dunphy, S.C. had a valid attorney lien, and based on undisputed material facts determined that attorney fees and costs requested by Cannon & Dunphy, S.C. were reasonable, we affirm. In each case, the award of reasonable attorney fees and costs was consistent with a Retainer Contract signed by each client with Cannon & Dunphy, S.C., and was consistent with the Separation Agreement between Cannon & Dunphy, S.C. and James Gende, who became successor counsel when he ceased to be a Cannon & Dunphy, S.C. employee. Gende objected to all awards to Cannon & Dunphy, S.C., claiming that they did not sufficiently document the claimed costs, and claiming that the fee allocation to which he agreed in his Separation Agreement was unenforceable because the Separation Agreement was contrary to public policy. We disagree and therefore affirm.

## Background

¶ 2. When Attorney James Gende ("Gende") was employed by Cannon & Dunphy, S.C. ("the firm" or "Cannon & Dunphy") in May 2000, he entered into an

Employment Agreement with the firm. He agreed therein, among other things, that:

> all clients assigned to him are clients of the law firm of the Corporation and are not the clients of the Employee. All fees generated on such client cases assigned to the Employee are the property of the Corporation regardless of when the fees are generated, or whether the Employee is still employed by the Corporation when the fees are generated.

The Employment Agreement also contained provisions for allocation of client fees in the event Gende left the firm and the client elected to discharge the firm and retain Gende. Each of the plaintiffs named in this appeal signed a Retainer Contract in which they retained "Cannon & Dunphy, S.C.," not Gende, to handle specified personal injury claims. The Employment Agreement specified that, as to the firm clients who elected to retain Gende if he left the firm, costs advanced by the firm up to the date of his departure would be repaid by Gende, and Gende would receive fees from any recovery relating to those clients based on a defined hourly rate for work he performed after leaving the firm. Gende specifically agreed that the termination provisions in the Employment Agreement were "fair and equitable."

¶ 3. Approximately four years later, Gende and the firm negotiated a Separation Agreement which Gende signed on April 8, 2004. In the Separation Agreement, Gende again agreed that the Employment Agreement "is fair and all of its terms are valid and binding" and he further agreed "not to initiate a challenge, in any forum, as to the validity of said agreement." In addition, Gende released Cannon & Dunphy "from any and all claims, actions, causes of action, contracts, lawsuits, demands, damages, injuries, costs, interest, judgment and compensation, whether known or

unknown from the beginning of time to the date of execution of this agreement." Under this release provision of the Separation Agreement, Cannon & Dunphy agreed to not "initiate[] any cause of action against [Gende] in any forum" and if it did, Gende's release of Cannon & Dunphy in said paragraph would be "null and void."[2]

¶ 4. Under the terms of the Separation Agreement, Gende obtained more favorable terms than are contained in the Employment Agreement with respect to allocating fees from existing clients of the firm who retained him after he left. According to the Employment Agreement, Gende would be paid for work on Cannon & Dunphy former client cases on a formula of post-departure hours worked multiplied by Gende's hourly rate based on his salary at Cannon & Dunphy. Under the Separation Agreement, for all but one case, Gende would keep twenty percent of the fee recovered. As to one case venued in Illinois, he was to keep twenty-five percent of the fee. Instead of the Employment Agreement obligation of immediate repayment of costs advanced by Cannon & Dunphy, the Separation Agreement allowed Gende to delay reimbursement of those costs until the particular case was concluded.

¶ 5. The plaintiffs in this appeal all chose to follow Gende to his own law firm. We find no evidence that any client terminated the Retainer Contract with Cannon & Dunphy for cause. Gende did not honor his obligations under the Separation Agreement when he did not voluntarily pay Cannon & Dunphy their share of the fees or reimburse the costs they had advanced when the

---

[2] The effect of this clause appears to prevent Cannon & Dunphy from suing Gende personally to collect fees to which they are entitled, but does not prevent enforcement of lien rights against settlement proceeds.

various cases were concluded. In all but one of these cases, the record shows that Cannon & Dunphy filed motions to intervene[3] and to assert its contractual attorney lien after the case had been settled and dismissed.

¶ 6. After ending his employment with Cannon & Dunphy, Gende twice sued the firm in Waukesha County. The first case (2004CV2587) was dismissed for failure to properly commence the action. A Decision and Order on April 26, 2006, dismissing the second case (2005CV1529) indicates that Gende sought a declaratory judgment that the Separation Agreement and the Employment Agreement are void as against public policy and unenforceable. The trial court granted Cannon & Dunphy's motion for summary judgment and dismissed the case. That case has been appealed, but is not presently before this court.

¶ 7. Also after leaving Cannon & Dunphy, Gende complained to the Office of Lawyer Regulation ("OLR") about the method Cannon & Dunphy used to calculate some costs charged to clients. His complaint to the OLR involved the same unit method of charging costs to clients that Gende alleged before the trial court invalidates each client's Retainer Contract—and hence defeats the lien for fees.[4] The OLR disagreed and concluded:

---

[3] In each case, Gende objected to the intervention; in each case, the trial court permitted intervention. Gende does not pursue this issue on appeal.

[4] Gende objected before the trial court, and apparently complained to the OLR, that Cannon & Dunphy charged: A flat fee of $.25 per page for photocopying; $.25 per local telephone call, regardless of duration; $.35 per desktop fax sent; and $.16 per minute for long distance telephone call in addition to local call charge. However, the record reflects that Gende represented just such manner of charges when seeking court approval of minor settlements while employed by Cannon & Dunphy and that the courts approved such charges.

Judge Foley ruled that the fees asserted by Cannon & Dunphy S.C. are reasonable. We agree with Judge Foley's decision.

While all fees must be reasonable, the Supreme Court Rules do not include a mandate for an attorney to calculate for a client the per-unit actual cost of nominal, fair expenses prior to or upon termination of the representation. There is insufficient evidence to support an allegation of ethical misconduct.

Gende sought review of the initial OLR decision, and the Director of the OLR advised:

I have determined that there is not a sufficient basis to proceed. I agree with Judge Foley that the costs charged in this matter are reasonable. The information you have provided is insufficient to support potential violations of Wisconsin Supreme Court Rules regarding communication as they relate to fees and costs.

¶ 8. All of the trial judges awarded Cannon & Dunphy summary judgment which affirmed the validity of their liens, found costs and attorney fees reasonable, and ordered that costs advanced and Retainer Contract attorney fees be paid from the proceeds of the recovery consistent with the Separation Agreement.[5] Each trial court declined to consider Gende's claims that the Employment Contract and the Separation Agreement were invalid, concluding either that they were irrelevant to the lien validity or that those issues were before another court. Gende appealed.

---

[5] Gende admits that he has retained twenty percent of all fees on these cases, which is a benefit he obtained in the Separation Agreement. His subsequent challenge to the validity of the very agreement from which he benefited suggests, at a minimum, a certain disingenuousness.

## Standard of Review

¶ 9. "We review an order for summary judgment de novo, applying the same standards as the trial court." *Piaskoski & Assocs. v. Ricciardi*, 2004 WI App 152, ¶ 6, 275 Wis. 2d 650, 686 N.W.2d 675. "Summary judgment is proper when the pleadings, answers, admissions and affidavits show no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* "We will reverse a decision granting summary judgment if the trial court incorrectly decided legal issues or if material facts are in dispute." *Id.* "Even if certain facts are in dispute, the dispute will not prevent the granting of summary judgment if the facts at issue are 'not material to the legal issue on which summary judgment is sought.' " *Id.* (citation omitted).

¶ 10. A court determines the reasonableness of attorney fees when allocating between original and successor counsel. *Herro, McAndrews & Porter, S.C. v. Gerhardt*, 62 Wis. 2d 179, 182, 214 N.W.2d 401 (1974), *overruled on other grounds by Standard Theatres, Inc. v. DOT*, 118 Wis. 2d 730, 747, 349 N.W.2d 661 (1984) ("[C]ourts have the inherent power to determine the reasonableness of attorney's fees."). A fee dispute between original counsel and successor counsel may properly be resolved on summary judgment. *Piaskoski*, 275 Wis. 2d 650, ¶¶ 6–11. Original counsel and successor counsel may enter into a binding contract dividing contingency fees in specific cases. *Id.*, ¶¶ 5, 10. An appellate court will uphold a trial court's finding of reasonable attorney fees absent a finding that the trial court abused its discretion. *Standard Theatres, Inc.*, 118 Wis. 2d at 747 ("[W]e hold that the proper standard

upon review of attorney fees is that the trial court's determination of the value of these fees will be sustained unless there is an abuse of discretion."). We review the validity of the lien *de novo*. *Herro*, 62 Wis. 2d at 183.

## I. Validity of lien

## A. Establishing an attorney lien for fees

¶ 11. Wisconsin does not recognize a common law attorney lien for fees before judgment, in the absence of a written contract. *See Weigel v. Grimmett*, 173 Wis. 2d 263, 267–68, 496 N.W.2d 206 (Ct. App. 1992) (discussing *Courtney v. McGavock*, 23 Wis. 619, 621–23 (1869)). In Wisconsin, by statute, an attorney lien before judgment can only be created by contract. WISCONSIN STAT. § 757.36 provides:

> **Lien on proceeds of action to enforce cause of action.** Any person having or claiming a right of action, sounding in tort or for unliquidated damages on contract, *may contract with any attorney* to prosecute the action *and give the attorney a lien upon the cause of action and upon the proceeds or damages* derived in any action brought for the enforcement of the cause of action, *as security for fees in the conduct of the litigation;* when such agreement is made and notice thereof given to the opposite party or his or her attorney, no settlement or adjustment of the action may be valid as against the lien so created, provided the agreement for fees is fair and reasonable. This section shall not be construed as changing the law in respect to champertous contracts.

(Emphasis added.) *See Knoll v. Klatt*, 43 Wis. 2d 265, 549 N.W.2d 555 (1969), *overruled on other grounds by*

527

*Herro*, 62 Wis. 2d 179, 214 N.W.2d 401 (1974); *Tonn v. Reuter*, 6 Wis. 2d 498, 95 N.W.2d 261 (1959).

¶ 12. The Retainer Contract[6] in each of these cases is identical except for the name of the client, the date of the incident giving rise to the representation, and the date signed by the client and the representative of Cannon & Dunphy. It provides in relevant part:

### CANNON & DUNPHY, S.C. RETAINER CONTRACT

[Client] . . . in consideration of the services agreed to be rendered and furnished do hereby *employ CANNON & DUNPHY, S.C. as my attorneys* to, with my consent, settle my claim or bring suit thereon for damages and out of the proceeds of said settlement, judgment, monies, etc. agree to give them one third (1/3) thereof as their compensation, and in the meantime, *I give them a valid lien in said amount pursuant to sec. 757.36, Wis. Stats.* . . . Additionally, CANNON & DUNPHY, S.C. hereby agrees to advance reasonable and necessary costs, expenses and disbursements for the prosecution of my claim which I will repay in addition to the legal fees. I understand that there will be no charge for services nor reimbursement for costs, expenses or disbursements advanced unless there is a recovery on my claim.

I have been advised that services could be rendered on an hourly basis, but I hereby elect to be bound by the contingent fee contract.

. . . .

In the event CANNON & DUNPHY, S.C. withdraw as my attorneys after I have received a settlement offer

---

[6] It is undisputed that each of the plaintiffs in this appeal signed a Retainer Contract containing this language.

which I reject, then I give them a valid lien in the amount of the settlement offer on the date of withdrawal or such lower amount as may be required by the Code of Professional Responsibility.

. . . .

CANNON & DUNPHY, S.C.

By:_____

 Attorney

(Client signature line omitted; capitalization as in original; emphasis added.)

## B. The attorney liens at issue

¶ 13. Gende, in arguing that Cannon & Dunphy had no valid lien on the attorney fees earned as a result of the clients signing the Retainer Contracts, advances three theories. First, Gende objects to any award of fees or costs to Cannon & Dunphy, arguing that he is not successor counsel. Gende argues that the Retainer Contract did not create a lien for Cannon & Dunphy because the plaintiffs were never clients of Cannon & Dunphy, but were instead his clients. Alternatively, Gende argues that the Retainer Contract was invalid because the method of calculating costs charged to the client was unethical. Finally, Gende argues that the Employment Contract and the Separation Agreement are void as against public policy, thus creating no obligation on his part to return fees from these cases to Cannon & Dunphy. We address these arguments separately.

## 1. Successor Counsel

¶ 14. Gende asserts that he, not Cannon & Dunphy, was personally retained in the initial Retainer

Contract. The facts unequivocally establish the contrary. As can be seen from the language of the Retainer Contract, Gende signed specifically on behalf of Cannon & Dunphy. The Retainer Contract repeatedly refers to the client employing Cannon & Dunphy, not Gende. The Retainer Contract obligates Cannon & Dunphy, not Gende, to perform services and advance costs. The Retainer Contract allows Cannon & Dunphy, not Gende, to withdraw under certain circumstances. Under the Retainer Contract, the client promises to pay Cannon & Dunphy, not Gende, one-third of any recovery and gives Cannon & Dunphy, not Gende, a lien for those attorney fees. As Judge Guolee aptly observed in response to Gende's claim that he, not Cannon & Dunphy, had always been the client's lawyer:

> An employee associate lawyer does not have a right to hijack the employer or the firm's rights and treasury when they leave a firm. That's basically what we have here . . . . [I]t would be like an employee . . . saying . . . I am going to take this television and this computer, and I am going to . . . just leave with them. And I am going to take some of the money that this firm . . . has accumulated and leave. And then say ["Y]ou fight me for it.["][7]

---

[7] Gende, in his brief and reply brief, argues that these statements, and even the fee agreements between original and successor counsel, reduce clients to the level of "chattel." This is a mischaracterization of the facts in the record. The record indicates that, at all times, the clients had the ability to retain whatever counsel that they wished. The clients chose to retain Cannon & Dunphy and voluntarily signed the Retainer Contracts. At the time of Gende's departure from Cannon & Dunphy, the clients then had the choice to remain with Cannon & Dunphy, to retain Gende or to retain another attorney. The clients in this case chose to retain Gende. The clients' free and intelligent choice to retain whatever counsel they desire, how-

530

As can be seen from the express language of the Retainer Contract, Cannon & Dunphy was the original retained counsel.

■

¶ 15. A client may freely change attorneys. However, as our supreme court long ago explained, terminating a contract with an attorney without cause is a breach of contract by the client. *Tonn*, 6 Wis. 2d at 503. "[W]here the attorney has been employed to perform specific legal services, his discharge, without cause or fault on his part before he has fully performed the work he was employed to do, constitutes a breach of his contract of employment and makes the client liable to respond in damages." *Id.* Damages to the attorney for breach by the client of the contingent-fee employment contract are the contingent fee based on the amount actually realized, less a fair allowance for the time and expenses the discharged attorney would have had to expend in performing the balance of the contract. *Id.* at 505. If there is not good cause for the discharge, any contractual attorney lien rights survive the discharge. *See id.* at 503; *see also Freyer v. Mutual Benefit Health & Accident Ass'n*, 45 Wis. 2d 106, 107, 172 N.W.2d 338 (1969) (recognizing a valid contractual lien for a discharged former attorney); *cf. McBride v. Wausau Ins. Cos.*, 176 Wis. 2d 382, 388, 500 N.W.2d 387 (Ct. App. 1993) (refusing to enforce lien of discharged attorney whose "standard of conduct is below that required of attorneys as a matter of law"). However, "[a] contingent-fee contract is always subject to the supervision of the court as to its reasonableness." *Tonn*, 6 Wis. 2d at 504.

---

ever, does not abrogate their contractual rights and responsibilities under their original Retainer Contracts with Cannon & Dunphy. *See Tonn v. Reuter*, 6 Wis. 2d 498, 503, 95 N.W.2d 261 (1959).

¶ 16. We find no evidence in the record that any of these plaintiffs discharged Cannon & Dunphy for cause. Nor has there been any challenge to the reasonableness of the one-third contingency-fee contract. Consequently, the original counsel, Cannon & Dunphy, is entitled to assert its rights to fees under the Retainer Contract. The Retainer Contract specifically grants Cannon & Dunphy an attorney lien to protect those fees. The Retainer Contract makes additional lien provisions should Cannon & Dunphy withdraw, and contains no language which abrogates the existing law that the lien remains in effect should the client discharge the firm without cause. We conclude, as did the trial courts, that Cannon & Dunphy may properly assert its lien, based on the Retainer Contract, to protect its right to attorney fees.[8]

## 2. Calculation of Costs

¶ 17. Gende claimed some of the costs charged under the Retainer Contract were unethical and thus invalidated the Retainer Contract and the resulting lien. Gende did not challenge all of the costs. His complaint centered only on the fixed unit charges for telephone, desktop fax, and photocopying. The trial court found that the costs charged were reasonable. Judge Foley, in a letter decision on the matter, observed:

[8] Indeed, because the Separation Agreement contains a clause invalidating the release provision of the agreement if Cannon & Dunphy sue Gende in any forum, it appears that the only remedy they have for Gende's obvious breach of the Separation Agreement is to assert the very lien to which he now objects.

[I]t boarders [sic] on the unimaginable that [costs] of $206.13 incurred in ten months representation in a significant personal injury action that ultimately resulted in a $87,500.00 settlement could be deemed unreasonable. On those facts alone, I would conclude they are reasonable. However, since it is Mr. Gende's position that an item-by-item analysis is necessary, I offer the following.

Photocopy charges of .25, which incorporate bate stamping, bar coding, labeling and folio costs are reasonable, particularly noting that copy costs charged by medical providers in this case for photocopying ranged from $1.10 to .45 and that HFS 117.05 permits charges at or above the level charged by Cannon & Dunphy for photocopying.

I am taking judicial notice of the fact that phone calls made from public pay phones now cost .50. On that basis I determine that the Cannon & Dunphy S.C.'s charge of .25 is reasonable. I reach the same conclusion as to their desktop faxing charge of .35.

¶ 18. We agree with Judge Foley's analysis. For the same reasons, we conclude that the method of calculating costs was reasonable.

¶ 19. We also independently conclude that in relation to the total recovery in each case, the costs requested by Cannon & Dunphy[9] are reasonable. We come to this conclusion based on the following undisputed facts relevant to each case.

¶ 20. *Markwardt v. Zurich America n Insurance Co.* (Case no. 2003CV8352) was filed September 18,

---

[9] These costs do not include payments to third-party vendors, expert witnesses and the like. Gende has not disputed those costs.

2003, and settled September 21, 2004. The total settlement was $87,500. Cannon & Dunphy costs disputed were $277.73, or 0.32% of the recovery. The fee to Cannon & Dunphy, under the Retainer Contract as reduced by the Separation Agreement, was $23,100.

¶ 21. *Rodriguez v. Allstate Insurance Co.* (Case no. 2003CV3470) was filed April 15, 2003, and settled January 25, 2005. The total settlement was $25,000. Cannon & Dunphy costs disputed were $291.42, or 1.17% of the recovery. The fee to Cannon & Dunphy, under the Retainer Contract as reduced by the Separation Agreement, was $6,600.

¶ 22. *Draskovich v. State Farm Mutual Automobile Insurance Co.* (Case no. 2004CV737) was filed January 23, 2004, and settled February 15, 2005. The total settlement was $45,000. Cannon & Dunphy costs disputed were $389.58, or 0.87% of the recovery. The fee to Cannon & Dunphy, under the Retainer Contract as reduced by the Separation Agreement, was $11,880.

¶ 23. *Tucek v. State Farm Mutual Automobile Insurance Co.* (Case no. 2004CV2876) was filed March 29, 2004, and settled May 19, 2005. The total settlement was $46,750. Cannon & Dunphy costs disputed were $175.96, or 0.4% of the recovery. The fee to Cannon & Dunphy, under the Retainer Contract as reduced by the Separation Agreement, was $12,342.

¶ 24. It is also undisputed that Cannon & Dunphy took a financial risk when it advanced substantial expenses for third-party providers, including in the *Tucek* case which was filed only a week before Gende signed the Separation Agreement, and when it agreed

to delay recovery of those costs until the conclusion of each particular case. Based on the records, we conclude that the costs claimed by Cannon & Dunphy are reasonable.

### 3. Impact of Employment Agreement and Separation Agreement on lien[10]

¶ 25. Gende argues that both the Employment Agreement and the Separation Agreement are contrary to public policy, and thus unenforceable. He made different arguments as to each of the documents. First, Gende argues that the Employment Agreement violates public policy because the terms of his employment were not disclosed to the client. He cites no authority for that proposition and we fail to see any logical reason why, generally, an associate attorney's employment contract with his or her employer should, as a matter of professional responsibility, be disclosed to a client of the firm. Nor do we see how that assertion is relevant to the attorney lien established in the Retainer Contract. Accordingly, on the facts of this case, we reject this argument.

---

[10] We observe that in the fact statement portion of his brief, Gende repeatedly "spins" the facts and editorializes in his description of the facts. For example, he repeatedly refers to the Employment Agreement and the Separation Agreement as "secret" agreements, apparently because, as is common with employment contracts and settlement agreements, the parties agreed they would be confidential. We remind litigants that editorial comment and argument interspersed in what Wis. Stat. Rule 809.19(1)(d) and (e) requires, namely an objective and completely accurate recitation of the facts, is inappropriate. *See Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶ 5 n.2, 281 Wis. 2d 173, 696 N.W.2d 194.

¶ 26. Next, Gende argues that these clients were damaged by not being given notice of the Separation Agreement. This assertion is not supported by any evidence. The record does not indicate that any client paid more because Gende and Cannon & Dunphy agreed upon a formula for dividing the fee. Rather, under the terms of the Separation Agreement, a method was developed and agreed to, by the original and successor counsel, whereby fees would be divided on an agreed-upon percentage so that no attorney time or expenses would need to be incurred to determine the percentage fee split for each individual transferred matter. Accordingly, on the facts of this case, we also reject this argument.

¶ 27. The trial court declined to consider these issues. We conclude that the validity of those agreements is irrelevant to the only defense Gende raised to the lien, namely the challenge to the costs. Having already explained our resolution of the costs allegation, we decline to pursue it further. Accordingly, based on the foregoing, we conclude that the attorney liens held by Cannon & Dunphy in these cases are valid.

## II. Reasonableness of the attorney fees

■

¶ 28. We have previously concluded that when an attorney ends employment with a law firm, the firm and the departing attorney may enter into a separation agreement that allocates between them the fees to be earned on contingent-fee cases which the departing attorney retains after the conclusion of employment. *Piaskoski*, 275 Wis. 2d 650, ¶ 25. The law firm, and the departing attorney, do not violate public policy by contracting for a method to allocate between them fees

on cases that have not been completed. *See id.*, ¶¶ 1, 5, 20. Where "both parties compromised any potential claims to more than [the agreed percentage of the specific client's] fee, providing consideration for their contract to divide the fee [as agreed]," this court has enforced a fifty percent agreed upon division between the firm and departing counsel. *Id.*, ¶ 17. An agreed percentage allocation between the original and successor counsel, which does not increase the fee due from the client, must still produce a reasonable fee, as applied to the group of cases subject to the agreement. *See Meyer v. Michigan Mut. Ins. Co.*, 2000 WI App 53, ¶ 13 n.4, 233 Wis. 2d 493, 609 N.W.2d 167 ("A lawyer's fee shall be reasonable."); *State v. Cannon*, 199 Wis. 401, 409, 226 N.W. 385 (1929) (holding that recovery of fees under contingency agreements must be fair and reasonable). The reasonableness of the fees under this allocation of the fees between original counsel and successor counsel is subject to control by the court. *See Herro*, 62 Wis. 2d at 183; *Tonn*, 6 Wis. 2d at 504. We note that courts have found one-third contingency fees to be reasonable. *Klabacka v. Schott*, 23 Wis. 2d 213, 218, 127 N.W.2d 19 (1964) (finding that a court does not abuse its discretion in upholding a one-third contingency fee contract); *cf. Kluenker v. DOT*, 109 Wis. 2d 602, 608, 327 N.W.2d 145 (Ct. App. 1982) (finding a forty percent contingency fee agreement reasonable). The trial courts did not abuse their discretion in finding that the one-third contingency fees were reasonable.

¶ 29. Both the Employment Agreement and the Separation Agreement are contracts. Our goal in contract interpretation is to determine and give effect to the parties' intentions. *Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶ 23, 233 Wis. 2d

314, 607 N.W.2d 276. "When the language of a contract is unambiguous, we apply its literal meaning." *Id.* Public policy favors freedom of contract. *See Gulmire v. St. Paul Fire & Marine Ins. Co.,* 2004 WI App 18, ¶ 18, 269 Wis. 2d 501, 674 N.W.2d 629.

¶ 30. We consider the Employment Agreement only insofar as it deals with post-employment fee allocation.[11] Wisconsin has long accepted that a portion of a contract may be severable, despite the fact that other portions may be illegal. *Schara v. Thiede,* 58 Wis. 2d 489, 495, 206 N.W.2d 129 (1973). We express no opinion on the validity of other portions of the Employment Contract because they are unnecessary to our decision here. *State v. Castillo,* 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (noting that an appellate court should decide cases on the narrowest possible grounds). Gende negotiated a substantial change to his benefit in these terms in the Separation Agreement. (See discussion, *supra,* ¶ 4.) Consequently, the validity of the Employment Agreement terms which are no longer in effect is moot. *State ex rel. Olson v. Litscher,* 2000 WI App 61, 3, 233

---

[11] Gende complains that the Employment Agreement restrictions on hiring staff from Cannon & Dunphy or employing experts or other independent contractors he used while in their employ are against public policy. However, none of those provisions have anything to do with the fee allocation obligation in the Employment Agreement or its modification in the Separation Agreement. Indeed, Gende has not even alleged that he wished to hire a person from the Cannon & Dunphy staff or that he suffered any difficulty because of the expert witness restriction. We decline to consider issues which are not necessary to the case before us. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663 (1938) (noting that only dispositive issue need be addressed).

Wis. 2d 685, 608 N.W.2d 425 ("An issue is moot when its resolution will have no practical effect on the underlying controversy."); *see also Warren v. Link Farms, Inc.,* 123 Wis. 2d 485, 487, 368 N.W.2d 688 (Ct. App. 1985). A moot question is one which circumstances have rendered purely academic. Generally, moot issues will not be considered on appeal. *Warren,* 123 Wis. 2d at 487. Accordingly, because the fee allocation formula at issue was not that contracted to in the Employment Agreement, but rather is the formula contracted to in the Separation Agreement, we will not consider any further the Employment Agreement fee allocation provisions.

¶ 31. As to the fee allocation formula contained in the Separation Agreement, Gende does not argue that his Separation Agreement with Cannon & Dunphy resulted in higher fees to the client than were set forth in the Retainer Contract. The record also confirms that each client was only charged the one-third contingency fee. Nor does Gende argue that the one-third contingency fee is unreasonable.[12] As noted above, the undisputed facts demonstrate the differences among the cases in the time between the beginning of the action and settlement of each case. (*See* discussion, *supra,* ¶¶ 19–23.) The undisputed facts also demonstrate the differences in the time during which work was done by Cannon & Dunphy and work was done individually by Gende. (*See id.*) By entering into the Separation Agreement, Cannon & Dunphy and Gende, as original counsel and successor counsel, respectively, sought to save the time and expense that would be required to litigate

---

[12] As noted above, courts have found one-third contingency fees are reasonable. *See, e.g., Klabacka v. Schott,* 23 Wis. 2d 213, 218, 127 N.W.2d 19 (1964).

the exact division of each fee at the conclusion of each case. This savings was consideration for each party agreeing to a set percentage allocation to be applied to all cases. We find nothing inherently unreasonable in such an agreement.

¶ 32. The trial court applied the percentage allocation agreed to in the Separation Agreement to the Retainer Contract fees. Based upon the undisputed facts in the records, we independently conclude that the fees awarded to Cannon & Dunphy were reasonable in these cases.

¶ 33. For all of the foregoing reasons, we affirm the orders enforcing Cannon & Dunphy's liens and the allocation of costs and fees consistent with the terms of the Separation Agreement. Costs awarded to respondent.

*By the Court.*—Orders affirmed.

¶ 34. FINE, J. (*dissenting*). The core issue presented by this appeal is whether Cannon & Dunphy, S.C., has an enforceable lien in each of the cases. I respectfully submit that it does not.

¶ 35. Unless a client recovers a judgment on his or her tort claim, and, accordingly, the lawyer has an equitable lien for fees, *Wurtzinger v. Jacobs*, 33 Wis. 2d 703, 712, 148 N.W.2d 86, 91 (1967), an attorney's lien for fees must be granted by contract with the client in order to be enforceable, *Weigel v. Grimmett*, 173 Wis. 2d 263, 267–271, 496 N.W.2d 206, 208–210 (Ct. App. 1992). The Majority recognizes this when it writes: "Wisconsin does not recognize a common law attorney lien for fees before judgment, in the absence of a written contract." Majority, ¶ 11. As the Majority also recognizes, WIS. STAT. § 757.36 permits the client to give his or her lawyer a fee-lien by contract. It provides:

540

Any person having or claiming a right of action, sounding in tort or for unliquidated damages on contract, may contract with any attorney to prosecute the action and give the attorney a lien upon the cause of action and upon the proceeds or damages derived in any action brought for the enforcement of the cause of action, as security for fees in the conduct of the litigation; when such agreement is made and notice thereof given to the opposite party or his or her attorney, no settlement or adjustment of the action may be valid as against the lien so created, provided the agreement for fees is fair and reasonable. This section shall not be construed as changing the law in respect to champertous contracts.

The extent of the agreed-to lien is controlled by the lien contract between the client and the lawyer. *See McBride v. Wausau Ins. Cos.*, 176 Wis. 2d 382, 391, 500 N.W.2d 387, 390 (Ct. App. 1993). Neither Cannon & Dunphy nor the Majority contends that the firm has an equitable lien on the settlements in these cases. Rather, they focus on Cannon & Dunphy's retention/lien-agreements with the firm's former clients. In my view, the lien agreements do not give Cannon & Dunphy liens on the settlement proceeds.

¶ 36. As the Majority notes, the lien agreements in these cases are identical. They provide:

[Client] having sustained personal injuries on or about [date], through the negligence and carelessness of all responsible parties and in consideration of the services agreed to be rendered and furnished do hereby employ CANNON & DUNPHY, S.C. as my attorneys to, with my consent, settle my claim or bring suit thereon for damages and out of the proceeds of said settlement, judgment, monies, etc. agree to give them one third (1/3) thereof as their compensation, and in the meantime, I give them a valid lien in said amount pursuant to sec. 757.36, Wis. Stats. In return, CANNON & DUNPHY, S.C. will make every effort, consistent with

the Rules of Professional Responsibility to provide me with all reasonable and necessary legal services in connection with the investigation and prosecution of my claim. Additionally, CANNON & DUNPHY, S.C. hereby agrees to advance reasonable and necessary costs, expenses and disbursements for the prosecution of my claim which I will repay in addition to the legal fees. I understand that there will be no charge for services nor reimbursement for costs, expenses or disbursements advanced unless there is a recovery on my claim.

I have been advised that services could be rendered on an hourly basis, but I hereby elect to be bound by the contingent fee contract.

I have been advised that at any time during the handling of my case, CANNON & DUNPHY, S.C. may recommend that the case not be continued for good and sufficient reasons, including, but not limited to, little or no likelihood of success on the claim's merits or a lack of available funds to satisfy the claim should it be successful. In the event they make such a recommendation to discontinue which I reject, I hereby agree that they may withdraw as my attorneys in consideration of their agreement to give me due notice of their withdrawal. CANNON & DUNPHY, S.C. agrees that they will comply with all the applicable provisions of the Code of Professional Responsibility. I have been advised by CANNON & DUNPHY, S.C. that they will undertake every reasonable effort to bring my claim to a successful conclusion prior to trial. If they negotiate a settlement prior to trial which they recommend I accept, I have the right to reject such recommendation. If I choose to reject their recommendation, then I agree that I will not object to them withdrawing as my attorneys upon their giving due notice and otherwise complying with the Code of Professional Responsibility. In the event CANNON & DUNPHY, S.C. withdraw as my attorneys after I have received a settlement offer

which I reject, then I give them a valid lien in the amount of the settlement offer on the date of withdrawal or such lower amount as may be required by the Code of Professional Responsibility.

As can be seen from this retention/fee-lien contract, which Cannon & Dunphy drafted, the firm was granted a lien under the following circumstances:

(1) Cannon & Dunphy either settles or gets a favorable judgment on the client's claim; or

(2) Cannon & Dunphy procures a settlement offer that is presented to the client and the client rejects the settlement offer, and Cannon & Dunphy then, as a result of that rejection, withdraws as the client's lawyers.

None of these things happened in any of the cases. Although Cannon & Dunphy might *wish* it had drafted its form retention/fee-lien contracts to secure a fee-lien if the client leaves the firm before settlement, it did not do so.

¶ 37. Cannon & Dunphy is a Wisconsin firm with a superb reputation for legal acumen, and all ambiguities in the contract it wrote must be interpreted against it and in favor of its clients (none of whom, insofar as the Record reveals, is a lawyer). *See DeWitt Ross & Stevens, S.C. v. Galaxy Gaming & Racing Ltd. P'ship*, 2004 WI 92, ¶ 66, 273 Wis. 2d 577, 605–606, 682 N.W.2d 839, 853–854. But Cannon & Dunphy's retention/fee-lien contract is *not* ambiguous—it plainly does not provide for its survival under the circumstances. Thus, no "interpretation" is necessary. *See McBride*, 176 Wis. 2d at 391, 500 N.W.2d at 390 (fee-lien agreement must "still be in force at the time the settlement is procured."). Accordingly, I

respectfully dissent from the Majority's conclusion that Cannon & Dunphy has valid statute-based contractual liens in these cases.