Robert G. LORGE d/b/a Lorge & Lorge Law Firm,
Plaintiff-Appellant,†

v.

Leann Marie RABL, J. Michael Riley, Atterbury,
Riley & Kammer, S.C., James A. Shapiro
d/b/a Highland Properties, Madison Property
Management, Inc., Secura Insurance Company
and Travelers Insurance Company,
Defendants-Respondents.

Court of Appeals

*No. 2007AP2133. Submitted on briefs February 8, 2008.
—Decided August 14, 2008.*

2008 WI App 141

(Also reported in 758 N.W.2d 798.)

† Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Howard B. Schoenfeld, Joseph A. Ranney* and *Michele L. Perreault*, of *DeWitt Ross & Stevens, S.C.*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *J. Michael Riley* and *Jason J. Knutson* of *Axley Brynelson, LLP*, Madison.

Before Dykman, Bridge and Brunner, JJ.

¶ 1. DYKMAN, J.  Robert Lorge appeals from an order granting partial summary judgment to Michael

Riley in Lorge's action following Riley's substitution as counsel for Lorge in a personal injury case, and Riley's subsequent recovery and disbursement of a settlement amount. Lorge claims that Riley is liable for breach of trust and conversion for failing to hold in trust an amount sufficient to cover his attorney's lien, and that Lorge is entitled to treble damages pursuant to WIS. STAT. § 895.446 (2005–06).[1]

¶ 2. Lorge also appeals from the judgment following trial awarding him $5,000 as the value of the services he provided before his client replaced him with Riley. Lorge claims that he is entitled to a larger fee under his contingency fee contract with his client. We conclude that Lorge cannot recover under his contingency fee contract with Rabl because he breached the contract by failing to provide adequate legal services. We also conclude that the trial court's factual findings supported its award of attorney fees as a proper exercise of its discretion. Accordingly, we affirm.

### Standard of Review

¶ 3. This case requires us to review a partial grant of summary judgment on Lorge's claims for damages as well as a judgment resulting from a trial on the merits of Lorge's claim for his attorney fees under his contingency fee contract. We review a trial court's summary judgment determination de novo, applying the standard found in WIS. STAT. § 802.08, which is the same methodology that the trial court uses. *Sonday v. Dave Kohel*

---

[1] After Lorge commenced this lawsuit, WIS. STAT. § 895.80 was renumbered as § 895.446. *See* 2005 Wis. Act 155, § 70. All references to the Wisconsin Statutes and the Wisconsin Supreme Court Rules are to the 2005–06 version unless otherwise noted.

*Agency, Inc.*, 2006 WI 92, ¶ 20, 293 Wis. 2d 458, 718 N.W.2d 631. We affirm an award of summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Section 802.08(2). A trial court's determination as to the allocation of fees between attorneys will be sustained unless the trial court has erroneously exercised its discretion. *Markwardt v. Zurich Am. Ins. Co.*, 2006 WI App 200, ¶ 10, 296 Wis. 2d 512, 724 N.W.2d 669.

## *Background*

¶ 4.    The following facts are undisputed. In 1997, LeAnn Rabl retained Lorge to represent her regarding a slip and fall in which she was injured. Lorge and Rabl entered into a contingency fee agreement entitling Lorge to 33–1/3 percent of any recovery Rabl received. The contract stated that it served as an attorney's lien for Lorge's fees and expenses. Over the next four years, Lorge took some steps to advance Rabl's case, including filing a complaint on her behalf. However, Lorge failed to move the case toward settlement contrary to Rabl's wishes, failed to communicate effectively with Rabl, and communicated erroneous legal advice to her.[2]

[2] The parties initially disputed how much Lorge did or did not do to advance Rabl's case and whether his actions were reasonable. Following trial, the trial court found that Lorge took some actions to advance Rabl's case, but that his conduct fell below a reasonable standard of care as Rabl's attorney. Neither party disputes the trial court's factual findings on appeal.

¶ 5.   In June 2001, Rabl hired Riley as her attorney and terminated Lorge's services. Rabl signed a contingency fee agreement with Riley's firm to pursue her claim.

¶ 6.   Lorge forwarded Rabl's file to Riley. Lorge signed a stipulation, and the court signed an order, substituting Riley for Lorge. Riley participated in mediation on behalf of Rabl, and in May 2002 the case settled for $100,000. In a letter dated July 1, 2002, Riley received a settlement check for $100,000, payable to Atterbury & Riley Trust Account and Rabl, and a release.

¶ 7.   In a letter to Riley and Rabl dated July 2, 2002, Lorge asserted a right to proceeds from the settlement. Riley disbursed the $100,000 settlement without paying Lorge anything. Lorge sued Rabl, Riley, and Riley's law firm, among others. Lorge alleged: (1) Rabl breached her contract with Lorge by failing to pay him and was liable to Lorge for damages; (2) Riley breached his trust obligations to Lorge, as described in SCR 20:1.15(d), and was liable to Lorge for damages; (3) under WIS. STAT. § 757.36, Lorge had a lien on Rabl's cause of action as security for his attorney fees, and Riley disregarded this lien; and (4) Riley breached his obligation under WIS. STAT. § 757.38 to obtain Lorge's consent in writing to the settlement, and, therefore, the settlement was invalid.[3]

[3] WISCONSIN STAT. § 757.38 reads:

No settlement or adjustment of any action which shall have been commenced to recover damages for any personal injury . . . in which an attorney shall have appeared for the person or persons having or claiming a right of action for such injury or death shall be valid, unless consented to in writing by such attorney or by an order of the court in which said action is brought approving of such settlement or adjustment.

¶ 8. The trial court granted partial summary judgment to Lorge and partial summary judgment to Rabl and Riley. The court granted summary judgment to Lorge on the issue of whether Lorge had a lien on the settlement proceeds because it concluded that the contract between Lorge and Rabl establishing Lorge's lien was valid and that Rabl and Riley had notice of the lien. However, the trial court left for trial the determination of the value, if any, of the lien.[4]

¶ 9. The trial court granted summary judgment to Rabl and Riley on Lorge's breach of trust claim, reasoning that SCR 20:1.15(d) does not provide a basis for a civil cause of action. The trial court also granted summary judgment to Rabl and Riley on Lorge's WIS. STAT. § 757.38 claim that the settlement was subject to Lorge's approval, concluding that there was no basis for invalidating the settlement.[5] Finally, the trial court granted summary judgment to Rabl and Riley on Lorge's demand for treble damages under WIS. STAT. § 895.446, concluding that this claim was based on Lorge's breach of trust claim and that, again, SCR 20:1.15(d) did not provide a basis for a civil cause of action.

¶ 10. Following trial, the trial court awarded Lorge $5,000 as the value of the legal services he had provided before being discharged and instructed Riley to forward this amount to Lorge. The trial court reasoned that Lorge was discharged for cause but that he had advanced the case to some extent, so there was a

---

[4] The trial court noted that whether the lien had any value turned on whether Lorge was discharged for cause, which was a factual issue for trial.

[5] Lorge does not appeal this issue.

benefit to Rabl. The court then found that $5,000 was a fair and reasonable amount for the work Lorge did on the case. Lorge appeals.

### *Discussion*

¶ 11. Lorge first contends that he is entitled to summary judgment on his claims for breach of trust and conversion because Riley failed to retain an amount sufficient to cover Lorge's attorney's lien, and that he is entitled to treble damages under WIS. STAT. § 895.446(3) because that same conduct also violated WIS. STAT. § 943.20. We disagree.

¶ 12. Lorge bases his claims for breach of trust, conversion and treble damages on Riley's disregard of the attorney's lien created in his contingency fee contract with Rabl. He argues that Riley is liable for breach of trust and conversion because he disbursed the entirety of the settlement amount he obtained on Rabl's claim without retaining a sufficient amount to satisfy Lorge's lien, despite the fact that Riley was aware that Lorge claimed a lien on the settlement amount.[6] He contends that Lorge was required to hold an amount in trust sufficient to cover his lien claim, and his failure to do so was a breach of trust, conversion, and a violation

---

[6] In his complaint, Lorge cites Supreme Court Rule 20:1.15(d) in his claim for breach of trust. However, as the trial court found, and Lorge concedes on appeal, supreme court rules do not establish civil liability. *See* SCR ch. 20 pmbl. Instead, Lorge claims that his complaint sets forth a claim for common law breach of trust and conversion. Riley argues that those claims are not set forth in Lorge's complaint and that they are time barred. We need not resolve this dispute. Assuming Lorge properly pled common law claims for breach of trust and conversion, the record establishes that he is not entitled to damages on those claims.

of Wis. Stat. § 943.20. Thus, we begin with an analysis of Lorge's claim of a lien on the settlement funds in Riley's possession.

¶ 13.   In *McBride v. Wausau Insurance Cos.*, 176 Wis. 2d 382, 500 N.W.2d 387 (Ct. App. 1993), we addressed the consequences of an attorney's discharge for cause on her contractual attorney's lien on settlement funds. There, McBride sued to enforce her attorney's lien following her former client's settlement with an insurance company, arguing that she had a contractual lien with her former client, and a statutory attorney's lien under Wis. Stat. §§ 757.36 to 757.38. *Id* at 384–85. We concluded that McBride was not entitled to recover. *Id.* at 385. First, we explained that "McBride's claim that she was entitled to a lien on the settlement proceeds by virtue of her contract with the injured plaintiff is valid only if she has the right to assert claims under the contract." *Id.* at 388. Because "the trial court concluded from undisputed facts that McBride breached the retainer agreement between herself as an attorney and the injured plaintiff by failing to reasonably perform the legal services consistent with the standard of care required of her by her profession," McBride could not recover under the contract. *Id.*

¶ 14.   Next, we addressed McBride's claim that she was entitled to a statutory lien on the settlement proceeds. *Id.* at 389–90. We rejected that claim as well, explaining that Wis. Stat. § 757.36

> does not create an attorney's lien on settlement proceeds in absence of a contractual lien given by the client. Rather, this statute merely enables a client to give the attorney a contractual lien that, under certain conditions, must be satisfied out of the settlement

169

> proceeds. One of the conditions . . . . is that the contract
> that created the lien still be in force at the time the
> settlement is procured.

*Id.* at 390. Thus, as we explained in *McBride*, an attorney's lien on the proceeds from a settlement only arises from a valid and enforceable contract granting the attorney the lien.[7] Because McBride breached the terms of her agreement with her client by failing to reasonably perform the legal services she had contracted to perform, she could not seek to enforce her lien under the contract. *Id.* at 388–89. In other words, McBride breached the contract establishing her lien, and therefore the contract was no longer enforceable when the settlement was obtained. *Id.* at 388–90. Thus, McBride did not have a valid lien. *Id.*

■

¶ 15.   Here, the trial court found after trial that Lorge's representation of Rabl fell below the standard of care of an attorney. Thus, as in *McBride*, Lorge breached his contingency fee agreement with Rabl, and therefore cannot seek to enforce the contract. Because Lorge breached his contract with Rabl, he did not have an enforceable lien at the time Riley collected and disbursed the settlement proceeds for Rabl's claim.[8]

---

[7] Neither party discusses whether Lorge would be entitled to a common law equitable attorney's lien on the facts of this case. We note, however, that we have concluded that an attorney does not acquire a common law equitable lien if the underlying cause of action is in tort and the case settles before coming to judgment. *See Weigel v. Grimmett*, 173 Wis. 2d 263, 267–68, 496 N.W.2d 206 (Ct. App. 1992). Thus, Lorge does not have a claim to a common law equitable attorney's lien.

[8] In *McBride v. Wausau Insurance Cos.*, 176 Wis. 2d 382, 389, 500 N.W.2d 387 (Ct. App. 1993), we left open the possibility

¶ 16. With these principles in mind, we turn to Lorge's claims for breach of trust, conversion, and treble damages under Wis. Stat. § 895.446. To support his claim for conversion,[9] Lorge cites *Connecticut v. Blawie*, 334 A.2d 484 (Conn. App. Ct. 1974), and *Bank of India v. Weg and Myers, P.C.*, 691 N.Y.S.2d 439 (N.Y. App. Div. 1999). In *Blawie*, the state welfare department sued partners in a law firm who had collected a personal injury settlement and then disbursed the proceeds despite the State's claimed lien on those proceeds. The court concluded that the State had a valid lien on the settlement proceeds,

> and that the action of the [lawyers] in disbursing the funds in disregard of the [State's] lien constituted a

that a lien may survive an attorney's breach of a contingency fee agreement under different facts. However, we also made clear that an attorney's breach by falling below the standard of care of an attorney precluded the attorney from seeking to enforce the lien under the contract. *Id.* at 388–89. Such is the case here. While the trial court found on summary judgment that Lorge had a valid lien on the settlement funds, it also left to determine at trial whether that lien had any value based on whether Lorge was discharged for cause. After trial, the trial court found that Lorge had fallen below the standard of care of a reasonable attorney in representing Rabl. Thus, under *McBride*, Lorge breached his contract with Rabl and his attorney's lien is not enforceable. *Cf. Markwardt v. Zurich Am. Ins. Co.*, 2006 WI App 200, ¶ 15, 296 Wis. 2d 512, 724 N.W.2d 669 ("If there is not good cause for the discharge [of an attorney under a contingency fee agreement], any contractual attorney lien rights survive the discharge.").

[9] Lorge does not separate his claims for breach of trust and conversion, arguing that his cited authority supports both claims under the facts of this case. He does not explain which authority supports which claim. However, because breach of trust and conversion are distinct causes of action, we address them separately, and discuss the cited authority within the cause of action it would reasonably support.

171

conversion for which the plaintiff is entitled to damages. A conversion is an unauthorized assumption and exercise of a right of ownership over property belonging to another, to the exclusion of the owner's right. The essence of the wrong here is that property rights of the plaintiff have been dealt with in a manner which is adverse to it, is inconsistent with its right of dominion, and is to its harm.

*Blawie*, 334 A.2d at 487. Thus, the court concluded that the State had a claim for conversion because it had a property interest in the settlement amount through its lien, and the lawyers interfered with that property right by disbursing the settlement amount to others. *See id.*

¶ 17. Similarly, in *Weg and Myers*, the court concluded that a law firm that disbursed insurance proceeds to itself and the insured despite a claim by a secured lender was liable for conversion. The court explained that "Weg & Myers converted the proceeds in its possession to its own benefit and that of its client by knowingly exercising unauthorized dominion and control over property in which the Bank, as a secured creditor, had a superior property interest." *Weg and Myers*, 69 N.Y.S.2d at 445 (citations omitted). Thus, as in *Blawie*, the court recognized a cause of action because of the existence of a valid property interest and the law firm's disbursement to others despite its knowledge of that property interest. Because Lorge did not have an enforceable lien at the time Riley disbursed the settlement funds, Lorge does not have a claim for conversion.

¶ 18. To support his claim for breach of trust, Lorge cites the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 44 (2000). That section requires "[a] lawyer holding funds . . . in which a client claims an interest" to "take reasonable steps to safeguard the funds," and recognizes that "[a] similar obligation may be imposed by

law on funds ... so held and owned or claimed by a third person." Comment (c) provides that "[a] lawyer who violates this Section can be subject to civil liability as well as disciplinary sanctions. A lawyer who converts the property of another is of course liable ...." Thus, the Restatement recognizes that an attorney is obligated to hold and safeguard funds claimed by another, and failure to do so exposes the lawyer to potential disciplinary action and civil liability. However, the comment to this section says the lawyer *can* be subject to civil liability, not that the lawyer *is* liable based on those actions. In contrast, it says that a lawyer who converts the funds of another *is* liable. It is clear from the Restatement and its accompanying comments that an attorney who fails to retain in trust money claimed by another will be subject to liability only if an independent cause of action, such as conversion, arises from the conduct.[10] Because Lorge did not have a valid property interest in the settlement amount giving rise to an independent cause of action, any misconduct by Riley in failing to hold funds in trust for Lorge is not a basis for a civil action.

---

[10] This approach is reflected in Wisconsin's Supreme Court Rules, which specify that an attorney is required to hold an amount in trust to cover all purported liens, but failure to do so does not create a civil cause of action against the attorney. *See* SCR ch. 20 pmbl.; SCR 20:1.15(d). Instead, failure to hold the required amount in trust subjects the attorney to disciplinary proceedings. *See* SCR ch. 20 pmbl.; SCR 20:1.15(d). On the other hand, a civil cause of action for interference with property rights requires that the funds actually belonged to another. *See, e.g.,* RESTATEMENT OF THE LAW GOVERNING LAWYERS § 44, cmt. c (2000) (explaining that lawyers may face civil liability for violating the requirement to hold funds in trust pending resolution of purported liens, such as when failure to do so results in conversion of the property of another).

173

¶ 19. Finally, Lorge claims that he is entitled to treble damages under Wis. Stat. § 895.446. Section 895.446(1) provides that "[a]ny person who suffers damage or loss by reason of intentional conduct that is prohibited under [Wis. Stat. §] 943.20, has a cause of action against the person who caused the damage or loss." Subsection (3)(c) allows a plaintiff to recover treble damages for violation of subsection (1). Section 943.20(1)(b), in turn, provides that whoever does the following is guilty of theft:

> By virtue of his or her office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner. A refusal to deliver any money or a negotiable security, instrument, paper or other negotiable writing, which is in his or her possession or custody by virtue of his or her office, business or employment, or as trustee or bailee, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his or her own use within the meaning of this paragraph.

Again, this cause of action requires that a plaintiff suffer damage or loss through the defendant's unauthorized use of the plaintiff's property; Lorge's claim is therefore predicated on his assertion that he had an ownership interest, through his lien, on the settlement funds that Riley then converted to his own use. Because he did not have an ownership interest, Lorge cannot recover under this statute.

¶ 20.  We note, however, that Lorge's claims are precluded by the trial court's findings after trial, while here Lorge appeals from the trial court's dismissal of his claims on summary judgment. The summary judgment submissions establish that Lorge and Rabl entered into a contingency fee contract granting Lorge an attorney's lien on any settlement amount Rabl ultimately obtained; that after Rabl substituted Riley as her counsel, Lorge forwarded Rabl's case file to Riley, including the retainer contract; that the parties disagreed over the quality of services Lorge provided to Rabl before he was discharged; and that Riley disbursed the settlement funds without paying Lorge. Thus, assuming that Wisconsin recognizes a cause of action for an attorney's disbursement of settlement proceeds despite another attorney's lien on those proceeds,[11] the summary judg-

---

[11] We recognize, as Riley points out, that Lorge has only cited cases from foreign jurisdictions and the Restatement, and has not identified a Wisconsin case that would recognize a cause of action on the same facts. Lorge concedes that no Wisconsin case has addressed whether his alleged facts give rise to civil liability, but cites *OLR v. Conmey*, 2005 WI 166, 286 Wis. 2d 514, 706 N.W.2d 633, as supporting a cause of action for conversion against an attorney who disburses cash held by the attorney but belonging to another. In *Conmey*, a disciplinary proceedings case, the supreme court recognized that Conmey had been found liable for conversion and subject to treble damages for converting money in an estate to his own use while he was the estate's personal representative. *Id.*, ¶¶ 10–13. The facts in Conmey are thus distinguishable. In any event, we need not decide whether Wisconsin would recognize a cause of action on the facts in the cases or the Restatement section cited by Lorge. Because Lorge did not have a valid lien at the time Riley disbursed the funds, Lorge cannot recover even under the authority he cites. However, we caution that although the particular development of this case precludes liability on the

ment submissions arguably establish a disputed issue of material fact as to whether Lorge had claims for breach of trust, conversion, and treble damages. However, we need not address whether such claims could ultimately prove successful under the facts pled by Lorge; regardless, the trial court's findings of fact following trial establish that Lorge cannot recover on these claims because he did not have a valid and enforceable lien on the settlement proceeds at the time Riley disbursed them. Thus, even assuming that neither party was entitled to summary judgment and the causes should have continued to trial, the result would be the same: Lorge cannot recover under theories of breach of trust, conversion, or WIS. STAT. § 895.446 damages.

■

¶ 21.    Lorge next argues that, after trial on the merits of his claim for attorney fees, the trial court erroneously exercised its discretion in awarding him $5,000 as the quantum meruit value of his legal services because the trial court failed to apply the correct legal standard under *Tonn v. Reuter*, 6 Wis. 2d 498, 95 N.W.2d 261 (1959). We disagree.

¶ 22.    In *Tonn*, the supreme court addressed the right of an attorney to recover under a contingency fee contract after being discharged without cause. It adopted the rule followed by a majority of jurisdictions that "where the attorney has been employed to perform specific legal services, his discharge, without cause or fault on his part before he has fully performed the work he was employed to do, constitutes a breach of his contract of employment and makes the client liable to

theories asserted by Lorge, attorneys are required to hold in trust a sufficient amount from settlement proceeds to cover claimed liens, and that failure to do so may subject an attorney to disciplinary proceedings and civil liability.

176

respond in damages." *Id.* at 503. Thus, the court concluded that the client had breached the contingency fee agreement by discharging the attorney without cause. *Id.* at 504. The court further concluded that

> the proper measure of damages to apply in a case like the present is the amount of the contingent fee based upon the amount of the settlement or judgment ultimately realized by the client, less a fair allowance for the services and expenses which would necessarily have been expended by the discharged attorney in performing the balance of the contract.

*Id.* at 505. Thus, the *Tonn* measure of damages applies when a client breaches a contingency fee contract by discharging an attorney without cause. Here, Lorge was discharged for cause because *he* breached the contingency fee contract. Thus, *Tonn* does not apply.

¶ 23.  Lorge argues, however, that *Tonn*'s holding is not so narrow. He contends that the *Tonn* formula applies whenever an attorney's conduct does not fall under what he categorizes as the "exception" created in *McBride* for attorneys who provide no services of value. We do not read *Tonn* and *McBride* as creating a rule and an exception. Instead, *Tonn* establishes the damages available to an attorney after a client breaches the contingency fee agreement by discharging the attorney without cause. *McBride* establishes the damages available to an attorney who has breached the contingency fee agreement and therefore cannot recover under the contract. In *McBride*, the attorney *also* provided no services of any value, and therefore recovered nothing in quantum meruit. *McBride*, 176 Wis. 2d at 389. Here, Lorge did provide some services of value, and the trial court calculated the value of those services as $5,000. Because Lorge cannot recover under his contingency fee contract following his breach of that contract, but

177

did provide services that enriched Rabl and Riley and was valued at $5,000,[12] we conclude that the trial court properly exercised its discretion in awarding Lorge attorney fees in that amount. *See Kreyer v. Driscoll,* 39 Wis. 2d 540, 546–47, 159 N.W.2d 680 (1968) (holding that a plaintiff who has breached a contract but has rendered part performance benefitting the defendant may recover in quantum meruit for the amount of that benefit). Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

---

[12] The parties do not raise the issue of whether a quantum meruit approach is appropriate where a discharged attorney sues a subsequent attorney to recover for fees provided to a former client. Quantum meruit requires that "(1) the defendant requested the plaintiff to perform services, (2) the plaintiff complied with the request, and (3) the services were valuable to the defendant." *W.H. Fuller Co. v. Seater,* 226 Wis. 2d 381, 386 n.2, 595 N.W.2d 96 (Ct. App. 1999). Here, both Rabl and Riley are defendants, but Riley has undertaken the defense efforts and has asserted that he will take responsibility for whatever damages are assessed against his client; obviously, Riley does not want to expose himself to disciplinary actions based on harm to his client. It is sufficient for purposes of this opinion, then, to recognize that while Rabl requested the services from Lorge, Riley requested the case file from Lorge and received it, and that both Rabl and Riley benefitted from Lorge's legal services. Thus, quantum meruit applies.