Doreen Tesch, Plaintiff,

v.

Laufenberg, Stombaugh & Jassak, S.C.
and Sias Law Office, LLC,
Defendants-Third-Party Plaintiffs-Appellants,

v.

Habush, Habush & Rottier, S.C.,
Third-Party Defendant-Respondent.

Court of Appeals

No. 2012AP2539. Submitted on briefs May 3, 2013.
—Decided July 3, 2013.

2013 WI App 103

(Also reported in 836 N.W.2d 849.)

On behalf of the defendants-third-party-plaintiffs-appellants, the cause was submitted on the briefs of *Lynn R. Laufenberg* of *Laufenberg, Stombaugh & Jassak, S.C.,* Milwaukee.

On behalf of the third-party-defendant-respondent, the cause was submitted on the brief of *Claude J. Covelli* of *Boardman & Clark LLP,* Madison.

Before Higginbotham, Blanchard and Kloppenburg, JJ.

¶ 1. BLANCHARD, J. The law firms of Laufenberg, Stombaugh & Jassak, S.C., and Sias Law Office, LLC (collectively "Laufenberg"), appeal a circuit court order dismissing the law firm of Habush, Habush & Rottier from this lawsuit involving the amount of money, if any, that Doreen Tesch owes Laufenberg under a contingency fee agreement in a personal injury case. Tesch signed the agreement with Laufenberg, but then several days later signed a separate contingency fee agreement with Habush related to representation in the same matter, after which she discharged Laufenberg as her attorney.

¶ 2. Alleging that its discharge was without cause, Laufenberg argued in the circuit court that *Tonn v. Reuter,* 6 Wis. 2d 498, 95 N.W.2d 261 (1959), applies to determine the amount that Tesch must pay Laufenberg, and that Habush is a necessary party to this lawsuit. The circuit court concluded that *Tonn* does not apply and on that basis granted Habush's motion to

dismiss Laufenberg's third-party complaint against Habush for failure to state a claim.

¶ 3. In *Tonn*, the supreme court concluded that a client's discharge of an attorney, without cause, from representation after the client and attorney have entered into a contingency fee agreement is a breach of contract. *Id.* at 503. The court further concluded that the damages for the breach equal "the amount of the contingent fee . . . less a fair allowance for the services and expenses which would necessarily have been expended by the discharged attorney in performing the balance of the contract" that the attorney did not have to perform because of the discharge. *Id.* at 505.

¶ 4. Here, we are presented with two issues: (1) whether *Tonn* applies to determine how much a client owes an attorney she discharged without cause, even if the attorney so discharged may not have performed "substantial services," and if so, (2) whether Habush is a necessary party to this lawsuit. We conclude that *Tonn* applies regardless whether the discharged attorney can prove that the attorney performed substantial services. We also conclude that Laufenberg fails to show that Habush is a necessary party. We thus affirm the court's order dismissing Habush from this case and remand for further proceedings consistent with *Tonn* and our decision.

## BACKGROUND

¶ 5. It is undisputed for purposes of this appeal that: Tesch was injured in an accident; while Tesch was hospitalized as a result, she entered into a one-third contingency fee agreement with Laufenberg; Tesch entered into a separate one-third contingency fee agreement with Habush several days later; and Tesch

then discharged Laufenberg as her attorney.[1] As we indicate below, other issues remain disputed.

¶ 6. Tesch initiated this action by filing a complaint against Laufenberg, seeking a declaratory judgment voiding her agreement with Laufenberg. She alleged that she had lacked mental capacity to enter into the agreement with Laufenberg at the time she signed it. Tesch further alleged that she discharged Laufenberg with cause, and on that basis, further alleged that enforcement of Laufenberg's agreement would be unconscionable.

¶ 7. Laufenberg denied these allegations and alleged as an affirmative defense that Tesch failed to join a necessary party, namely, Habush. Additionally, Laufenberg asserted a counterclaim against Tesch, alleging that Tesch discharged Laufenberg without cause and that Laufenberg was entitled to damages from Tesch, in an amount to be determined under *Tonn*.

¶ 8. Laufenberg also filed a third-party complaint against Habush, alleging claims for an accounting and disgorgement. Laufenberg alleged that Habush had indicated that: Habush had obtained a partial settlement on Tesch's underlying personal injury claims; Habush would hold up to one-third of the proceeds in trust for Laufenberg; and Habush intended to take an unspecified fee from the proceeds, whether as a contingency fee or otherwise, such that Tesch might be liable to Laufenberg and Habush for an amount greater than she would have paid under a single contingency fee agreement. Laufenberg sought a declaration that Tesch was required to pay no more than the amount she

---

[1] To add a detail, the Laufenberg agreement provided that the fee would increase to forty percent in the event of an appeal. For the sake of simplicity, we refer to these agreements as if each is a pure one-third contingency fee agreement.

would owe under a single contingency fee agreement, such that Habush would be unlikely to receive its full fee under its contingency fee agreement with Tesch.

¶ 9. Habush moved to dismiss Laufenberg's third-party complaint for failure to state a claim. In arguments on the motion, Habush and Laufenberg disputed the applicability and interpretation of *Tonn* and whether Habush was a necessary party to the lawsuit.

¶ 10. The circuit court determined that *Tonn* does not apply because Laufenberg, unlike the discharged attorney in *Tonn*, did not perform substantial services for Tesch. As part of this determination, the court stated the view that applying *Tonn* would impermissibly interfere with the court's supervisory authority to determine reasonable fees to Laufenberg and Habush. Based on these determinations, the court concluded that Laufenberg failed to state a claim against Habush. The court did not explicitly purport to resolve the necessary party issue, but must have implicitly concluded either that Habush is not a necessary party or that the issue is moot, given the court's conclusion that Laufenberg failed to state a claim against Habush. The court dismissed Laufenberg's complaint against Habush, effectively dismissing Habush as a party. Laufenberg appeals.

¶ 11. We reference additional facts as needed in the discussion below.

## DISCUSSION

¶ 12. We review a circuit court's decision on a motion to dismiss for failure to state a claim de novo. *H.A. Friend & Co. v. Professional Stationery, Inc.*, 2006 WI App 141, ¶ 8, 294 Wis. 2d 754, 720 N.W.2d 96. "The

facts set forth in the complaint must be taken as true and the complaint dismissed only if it appears certain that no relief can be granted under any set of facts that the plaintiffs might prove in support of their allegations." *Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 923, 471 N.W.2d 179 (1991). "The reviewing court must construe the facts set forth in the complaint and all reasonable inferences that may be drawn from those facts in favor of stating a claim." *Id.* at 923–24.

¶ 13. As indicated above, Tesch alleges that she discharged Laufenberg with cause. However, given the current procedural posture of this case, we must take as true Laufenberg's allegations to the contrary, which have not been resolved to date in the circuit court. *See id.* We therefore take it as true at this stage of proceedings that Tesch discharged Laufenberg without cause, as Laufenberg alleges. Our discussion below does not address the situation in which an attorney is discharged with cause.

¶ 14. As already stated, this case presents two issues: (1) whether *Tonn* applies even if the discharged attorney cannot prove that the attorney performed substantial services, and if so, (2) whether Habush is a necessary party to this lawsuit. We first explain why we conclude that *Tonn* applies. We then explain why we conclude that Laufenberg fails to persuade us that Habush is a necessary party.

### 1. Tonn Applies

¶ 15. In *Tonn*, the client discharged, without cause, an attorney with whom the client had a contingency fee agreement, after the attorney had performed "substantial services." *Tonn*, 6 Wis. 2d at 499–501, 503. The circuit court permitted the client to substitute a

successor attorney and ordered an equitable distribution of fees between the two attorneys, eventually determining the amount of money that each attorney would receive. *See id.* at 501–02. The discharged attorney appealed. *Id.* at 502.

¶ 16. The supreme court in *Tonn* initially framed the issue on appeal as "concerned with the rights of an attorney . . . who has been employed by a client to perform a specific task and then is discharged by the client without cause after performance of substantial services." *Id.* at 503. In addressing this issue, the court adopted what it characterized as the "majority rule" that a discharge without cause is a breach of contract. *Id.* The court rejected the contrary rule that a discharge without cause is not a breach of contract. *See id.* Specifically, the *Tonn* court concluded that, "where the attorney has been employed to perform specific legal services, his discharge, without cause or fault on his part before he has fully performed the work he was employed to do, constitutes a breach of his contract of employment and makes the client liable to respond in damages." *Id.*

¶ 17. The court in *Tonn* also addressed the proper amount of damages for such a breach, posing the question as: "What is the measure of damages where an attorney[,] . . . employed on a contingent-fee contract to undertake a specific task[,] is discharged without cause?" *Id.* at 504. The court considered alternate rules and concluded the measure of damages "in a case like the present [one]" is "the amount of the contingent fee . . . less a fair allowance for the services and expenses which would necessarily have been expended by the discharged attorney in performing the balance of the contract." *Id.* at 505.

¶ 18. Finally, the court in *Tonn* cautioned that "[a] contingent fee contract is always subject to the supervision of the court as to its reasonableness." *Id.* at 504. The court summarily concluded that the contingent fee agreement before it was neither unreasonable nor excessive, and, "[t]herefore," that there was "no issue [as to] the validity of the contingent-fee contract." *Id.*

¶ 19. Laufenberg argues that the circuit court erred when it distinguished *Tonn* on the ground that Laufenberg did not perform substantial services for Tesch and concluded therefore that Laufenberg could not recover money from Tesch under a theory that the contingency fee agreement was breached. We agree with Laufenberg.

¶ 20. The circuit court appeared to rely on the *Tonn* court's initial framing of the issue as pertaining to the contractual rights of an attorney who has been discharged from a contingency fee agreement without cause "after performance of substantial services." *See id.* at 503; *see also id.* at 505 (addressing what the measure of damages should be "in a case like the present [one]"). However, we conclude for two reasons that *Tonn* applies regardless whether the discharged attorney performed substantial services.[2]

¶ 21. First, no other aspect of *Tonn*'s analysis makes reference to whether the attorney performed substantial services. In particular, nothing in the *Tonn* court's discussion of the split of authority or alternative rules used in other jurisdictions, and nothing in the court's reasoning for adopting the rules that it adopted, makes any reference to the performance of substantial

---

[2] Based on this conclusion, we need not reach Laufenberg's argument that the circuit court made a premature factual determination that Laufenberg did not perform substantial services for Tesch.

services as a prerequisite. *See id.* at 503–05. Likewise, the *Tonn* court did not qualify its conclusions with a reference to whether the discharged attorney performed substantial services.[3] Thus, the more accurate reading of *Tonn* is that *Tonn* is not limited to a substantial services situation.

¶ 22. Second, even if *Tonn* could be read as leaving open the possibility that a different rule applies when the discharged attorney did not perform substantial services, subsequent case law appears to have foreclosed that possibility. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997) (only the supreme court may overrule or modify a published decision of the court of appeals). In *Markwardt v. Zurich American Insurance Co.*, 2006 WI App 200, 296 Wis. 2d 512, 724 N.W.2d 669, this court summarized *Tonn*'s conclusions without qualifying those conclusions based on whether the discharged attorney performed substantial services: " '[W]here the attorney has been employed to perform specific legal services, his discharge, without cause or fault on his part before he has fully performed the work he was employed to do, constitutes a breach of his contract of employment and makes the client liable to respond in damages.' " *Id.*, ¶ 15 (quoting *Tonn*, 6 Wis. 2d at 503). "Damages to the attorney for breach by

---

[3] It is true that, in reciting background, the court's decision includes a paragraph itemizing specific services provided by the discharged attorney, and describes those services as "extensive." *See Tonn v. Reuter*, 6 Wis. 2d 498, 500, 95 N.W.2d 261 (1959) (stating that the discharged attorney "conducted extensive adverse examinations," "carried on extensive correspondence with plaintiff's attending physicians" and two hospitals, "held many interviews with the plaintiff," and "conducted extensive settlement negotiations"). However, as we observe in the text, the court does not in its reasoning or conclusions suggest that the scope or quantity of these services informed its analysis.

the client of the contingent-fee employment contract are the contingent fee based on the amount actually realized, less a fair allowance for the time and expenses the discharged attorney would have had to expend in performing the balance of the contract." *Id.* (citing *Tonn*, 6 Wis. 2d at 505). Similarly, in *Estate of Boyle v. Wickhem, Buell, Meier, Wickhem & Southworth, S.C.,* 134 Wis. 2d 214, 397 N.W.2d 124 (Ct. App. 1986), this court explained that *Tonn* is "focused on the rights of an attorney who had been discharged without cause and the reasonableness of the attorney fee." *Id.* at 221. The court in *Estate of Boyle,* as in *Markwardt,* did not qualify *Tonn* based on whether an attorney performed substantial services.

¶ 23. Moreover, while we are not bound by it, federal authority points in the same direction. The federal district court in *Avery v. Manitowoc County,* 428 F. Supp. 2d 891 (E. D. Wis. 2006), applied *Tonn* even though the client there entered into an agreement with the successor attorney on the *same day* that the client had entered into an agreement with the discharged attorney. *See id.* at 893, 895–96.

¶ 24. We also observe that, if the circuit court and Habush were correct about *Tonn,* then the result would be litigation over what constitutes "substantial services" and courts would be faced, at least in some cases, with difficult line-drawing exercises as to what services are "substantial" or not. Habush does not point to anything in *Tonn* or any other authority upon which courts could rely to determine what scope or quantity of services would be "substantial" for this purpose.

¶ 25. If an attorney in Laufenberg's position was shown to have been justifiably discharged before performing significant services for the reason that the attorney failed to act in a timely or diligent manner on

behalf of the client, our analysis would be different. That would be a "with cause" case and *Tonn* would not apply. As we have explained, however, here we must take it as true for purposes of this appeal that Tesch discharged Laufenberg without cause. As Laufenberg correctly points out, the *Tonn* court "made a clear policy determination that counsel discharged without cause would have a right of recovery based on breach of contract" and further "made a policy decision to protect prior counsel's expectation interest."

¶ 26. Turning to a portion of the circuit court's rationale, we are uncertain why the circuit court concluded that *Tonn* does not apply here on the ground that its application would interfere with the court's supervisory authority to determine fees for either Laufenberg or Habush. It is true that *Tonn* limits the court's authority in the sense that *Tonn* provides a measure of contract damages that are owed to attorneys who have been discharged without cause. In particular, given *Tonn*, the court cannot exercise its authority to reduce the amount owed to the discharged attorney for the reason that the attorney was discharged without cause, or that the attorney did not perform substantial services. That would be an end run around *Tonn*. What remains for the circuit court, assuming as we must for now that Laufenberg's discharge was without cause, is to subtract from Laufenberg's contingency fee a "fair allowance for the services and expenses" that Laufenberg would "necessarily have ... expended ... in performing the balance of the contract," *see Tonn*, 6 Wis. 2d at 505, and to exercise its supervisory authority over Laufenberg's contingency fee agreement if appropriate, *see id.* at 504 ("contingent-fee contract is *always* subject to the supervision of the court as to its reasonableness"

(emphasis added)); *Markwardt*, 296 Wis. 2d 512, ¶ 15 (quoting *Tonn* for same proposition).[4]

¶ 27. In support of the circuit court's decision, Habush argues that *Tonn* is distinguishable because Laufenberg and Habush have not agreed that the court could make an "equitable distribution" of money owed to attorneys once the client's case concluded, unlike the attorneys in *Tonn*. This argument misreads *Tonn*. The circuit court in *Tonn* ordered that there would be an

---

[4] Ordinarily, the court exercises its supervisory authority over contingency fee agreements by considering " 'all the circumstances of the case to determine whether the contingency fee amount is a just and reasonable figure.' " *See Anderson v. MSI Preferred Ins. Co.*, 2005 WI 62, ¶ 37, 281 Wis. 2d 66, 697 N.W.2d 73 (quoting *Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 204, 496 N.W.2d 57 (1993)). As part of this analysis, the court considers any applicable factors in SCR 20:1.5(a). *Id.* Those factors include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services.

*Id.* (quoting SCR 20:1.5(a)). We omit the eighth factor in SCR 20:1.5(a), which is "whether the fee is fixed or contingent." *See id.* (quoting SCR 20:1.5(a)(8)).

"equitable distribution" once the client's case concluded, *see Tonn*, 6 Wis. 2d at 501, but it is not apparent that the attorneys agreed to this arrangement. In any event, it is obvious from the discharged attorney's appeal and arguments in *Tonn* that the discharged attorney disagreed with the distribution the court made. And, the supreme court's analysis in *Tonn* suggests that, regardless of any such agreement, the circuit court's primary task is to award damages to the discharged attorney comprising the contingency fee minus the value of the unperformed work. *See id.* at 506.

¶ 28. Habush also argues that Tesch's lawsuit is solely a dispute between Tesch and Laufenberg, and that *Tonn* applies only to disputes between attorneys. We see nothing in *Tonn* limiting its application to disputes between attorneys.

¶ 29. Finally, Habush argues that it entered into its contingency fee agreement with Tesch without any basis to believe at that time that Tesch had previously signed an agreement with Laufenberg, and that *Tonn* should not apply for this reason.[5] We see nothing in *Tonn* that would allow for some sort of equitable exception on this basis.

¶ 30. Accordingly, we conclude that the circuit court erred in determining that *Tonn* does not apply, at least at this stage of the proceedings, when we must assume as true that Tesch entered into a valid contingency fee agreement with Laufenberg and then discharged Laufenberg without cause.[6]

---

[5] Laufenberg asserts that Habush learned of Laufenberg's agreement within days of Habush agreeing to represent Tesch and before Habush performed significant services for Tesch. Habush does not address these assertions. Regardless, we need not and do not take a position on this topic for purposes of this appeal.

[6] Laufenberg argues in the alternative that Habush should

## 2. Habush Is Not a Necessary Party

¶ 31. In the remainder of this decision, we explain why we conclude that Laufenberg fails to persuade us that Habush is a necessary party.

¶ 32. A party may be considered "necessary" under any one or more of the criteria set forth in WIS. STAT. § 803.03(1) (2011–12). *See McNally CPA's & Consultants, S.C. v. DJ Hosts, Inc.*, 2004 WI App 221, ¶ 22, 277 Wis. 2d 801, 692 N.W.2d 247. Section 803.03(1) provides that

> A person who is subject to service of process shall be joined as a party in the action if:
>
> (a) In the person's absence complete relief cannot be accorded among those already parties; or

---

be judicially estopped from arguing that *Tonn* does not apply. Laufenberg asserts that Habush took a position on *Tonn's* applicability in *Action Law, S.C. v. Habush, Habush, Davis & Rottier, S.C.*, No. 1996AP2305, unpublished slip op. (WI App Feb. 20, 1997) ("*Action Law I*"), and in *Action Law, S.C. v. Habush, Habush, Davis & Rottier, S.C.*, No. 1998AP2134, unpublished slip op. (WI App Feb. 4, 1999) ("*Action Law II*"), that prevailed in those cases and that is directly contrary to the position *Habush* takes here. Habush was the discharged attorney in *Action Law I* and *Action Law II. See Action Law I*, No. 1996AP2305, 1997WL68108, *1; *Action Law II*, No. 1998AP2134, 1999WL47585, *1. We concluded in *Action Law I* that "nothing in the court's decision in *Tonn* indicates that the amount of work performed before discharge has a bearing on the manner for determining damages." *Action Law I*, No. 1996AP2305, 1997WL68108, *1, *5. We repeated our conclusion in *Action Law II. See Action Law II*, No. 1998AP2134, 1999WL47585, *2. Based on our discussion in the text above, we need not and do not reach Laufenberg's judicial estoppel argument.

(b) The person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:

1. As a practical matter impair or impede the person's ability to protect that interest; or

2. Leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest.

¶ 33. The parties do not focus in great detail on the statutory criteria. Rather, their dispute as to whether Habush is a necessary party boils down to a dispute regarding whether, under *Tonn*, Tesch may be required to pay the attorneys in total an amount that exceeds what she would have paid under only one of the contingency fee agreements.

¶ 34. Laufenberg argues that the total amount Tesch must pay is limited to a "single contingency fee." As we understand it, what Laufenberg means by this is that Tesch cannot be required to pay more in total to both attorneys than the amount she would have paid under only one of the contingency fee agreements. According to Laufenberg, the circuit court is to determine the allocation of that "single attorneys fee" between the discharged and successor attorneys using its supervisory authority and the formula established in *Tonn*. Under this theory, Laufenberg argues that Habush is a necessary party because the amount that Habush receives will depend on the amount that Tesch must pay Laufenberg as damages under *Tonn*.

¶ 35. Habush argues that neither *Tonn* nor any other Wisconsin law supports this "single fee" theory. On the contrary, Habush argues, *Tonn* contemplates that the client, at least in some cases, may be liable to

648

the discharged and successor attorneys for more than the amount the client would have owed under one contingency fee agreement. Habush argues that, unless Laufenberg and Habush are required to "share a single contingency fee," meaning required to divide whatever amount Tesch would have owed under only one agreement with one attorney, the dispute between Tesch and Laufenberg over what Laufenberg is owed will not affect what Habush is owed. Habush argues that the "predicate" for Laufenberg's necessary-party arguments is the "assumption that Laufenberg and Habush are required to **share** a **single** contingent fee." (Habush's emphasis.)

¶ 36. For reasons we discuss further below, we agree with Habush that *Tonn* does not contemplate the single-fee theory, and in fact rejects it.

¶ 37. *Tonn* plainly contemplates that, depending on the circumstances, the client may be liable to the attorneys for more than the amount the client would have owed under one contingency fee agreement. Specifically, the court in *Tonn* made a point of stating that, in the absence of a stipulation by successor counsel to receive some other fee, the client is liable for successor counsel's full contingency fee, unless the court exercises its supervisory authority to determine that successor counsel's fee is excessive. *Tonn*, 6 Wis. 2d at 507.

¶ 38. In addition, *Tonn* suggests that it is not necessarily unfair to hold the client liable for more than the amount the client would have owed under one contingency fee agreement, depending on the circumstances. Specifically, the court in *Tonn* stated that the circuit court "rightly . . . admonished [the client], at the time of the hearing with respect to the substitution of attorneys, that by discharging [the initial attorney] and employing other attorneys *she might have to pay a*

*larger total attorney fee than if she had continued the employment of [the initial attorney]." Id.* at 506 (emphasis added). "[The circuit court] explained . . . that the reason for such possibility occurring was the fact that the substituted counsel might have to duplicate work already performed by [discharged counsel]." *Id.* We read this language as directly contrary to Laufenberg's "single fee" theory.

¶ 39. Moreover, our reading follows logically from *Tonn*'s unambiguous conclusion that the client's discharge of an attorney from the fee agreement, without cause, is a breach of contract making the client liable for damages. In other words, although *Tonn* alternates between using "fee" and "damages" terminology, it is clear under *Tonn* that the amount that the client must pay the discharged attorney is not, strictly speaking, an attorney's fee; it is damages for a breach of contract. Stated another way, although *Tonn* contemplates that a client may be liable for more than the *amount* of a single fee, this liability is not, strictly speaking, all in the form of attorney's fees. Rather, it is in the form of contract damages to the discharged attorney and attorney's fees to the successor attorney. While there may not be much difference from the client's point of view, the difference matters in that, under the logic of *Tonn*, the client is not being required to pay more than one fee to one attorney; rather, the client is being required to pay contract damages to one attorney and attorney's fees to the other.

¶ 40. Laufenberg argues that the supreme court in *Tonn* was "expressly *not deciding*" whether successor counsel may hold the client liable for an "additional fee." (Laufenberg's emphasis.) We disagree, based on the portions of *Tonn* discussed above. Laufenberg appears to rely on a separate portion of *Tonn*, in which the

supreme court stated that "whether [the successor attorney in *Tonn*] ha[s] any recourse against the [client] to recover the balance of the $1,750 fee allowed to [the successor attorney] is not an issue on this appeal." *See id.* at 506. In context, however, we read this statement as indicating only that the amount of the client's liability for the successor attorney's contingency fee remained for the circuit court to address on remand, depending on whether the successor attorney decided to press for the additional fees to which that attorney might be entitled.

¶ 41.　Laufenberg's only other authority for asserting that Tesch is limited to liability for the amount of a single contingency fee is the federal district court's decision in *Avery*. Laufenberg asserts that the court in *Avery* explained that *Tonn* requires that a client pay no more than "a single attorneys fee." Specifically, the court in *Avery* stated that *Tonn* could "reasonably be read" for the proposition that "a client may not be required to pay a combined fee to a discharged and successor attorney that exceeds the fee to which the client agreed." *Avery*, 428 F. Supp. 2d at 895. We find this statement in *Avery* difficult to interpret. Assuming, however, that the *Avery* court interpreted *Tonn* to state a rule that a client may not be liable for an amount that exceeds what she would have paid under one contingency fee agreement, we conclude that *Avery* would be wrong, based on our discussion of *Tonn* above. And, we are bound by *Tonn*, not *Avery*, on this question of state law. *See State v. Mechtel*, 176 Wis. 2d 87, 94, 499 N.W.2d 662 (1993) (state courts are not bound by determinations of lower federal courts, even on federal questions).

¶ 42.　Laufenberg argues that it is bad public policy to require that a client might be obligated to pay more to attorneys than the amount set in one contin-

gency fee agreement. More specifically, Laufenberg argues that a client will be unlikely to feel free to discharge an attorney, a step that might well be in a client's strong interest, if a client knows that a discharge could result in a "double" fee obligation. In addition, as Laufenberg's arguments suggest, there may be other considerations that weigh against imposing more than a single contingency fee. *See Avery*, 428 F. Supp. 2d at 895 (a rule requiring the client to pay more than a single contingency fee amount would "reflect poorly on the legal profession"). While there are counterarguments to these policy considerations, Laufenberg may be on the right track insofar as its arguments suggest that *Tonn* is ripe for review by our supreme court. However, as we have repeatedly said, we are bound by *Tonn*. Any argument that *Tonn* should be revisited must be directed to our supreme court. *See Cook*, 208 Wis. 2d at 189–90 (only the supreme court may overrule or modify its prior decisions).

¶ 43. We therefore conclude that, under *Tonn*, Tesch's total liability to Laufenberg and Habush is not necessarily limited to the amount she would have owed under only one agreement. Thus, as Habush argues, the "predicate" for Laufenberg's necessary-party arguments is false.

¶ 44. Laufenberg does not appear to dispute Habush's contention that Laufenberg's single-fee theory is the predicate for Laufenberg's necessary-party arguments. Regardless, Laufenberg does not develop an alternative argument explaining why, if this predicate is false, Habush is a necessary party. If there is some other reason why Habush could be a necessary party, apart from Laufenberg's single-fee theory predicate, Laufenberg does not make that clear. We again note that neither party has focused in detail on the statutory

652

criteria for a necessary party, instead devoting their arguments to whether Laufenberg's single-fee theory is correct. Accordingly, we conclude that Laufenberg fails to present a persuasive argument supporting its position that Habush is a necessary party.

¶ 45. We caution that, although *Tonn* contemplates that a client may be liable to attorneys for more than the amount she would have owed under one contingency fee agreement, Habush cites no authority for the proposition that a client is *necessarily* liable for successor counsel's *full* contingency fee. Rather, the circuit court remains free to exercise its supervisory authority to determine whether a successor counsel's, not just a discharged counsel's, fee agreement is reasonable. In deciding whether to exercise its supervisory authority over Habush's fee agreement, the circuit court is not limited under *Tonn* in the same way that it is limited with respect to Laufenberg's fee agreement. *See supra*, ¶ 26. As we indicated above, the ordinary rule is that the court may exercise its authority over a contingency fee agreement by considering "*all* the circumstances." *See Anderson v. MSI Preferred Ins. Co.*, 2005 WI 62, ¶ 37, 281 Wis. 2d 66, 697 N.W.2d 73 (emphasis added); *supra*, ¶ 26 n.4.

## CONCLUSION

¶ 46. For all of the reasons stated, we affirm the circuit court's order dismissing Laufenberg's complaint against Habush and remand for further proceedings consistent with *Tonn* and our decision.

*By the Court.*—Order affirmed and cause remanded.